## COMMONWEALTH v. JONES.

1. A quo warranto directed to one holding the office of mayor of a municipal corporation may be prosecuted by a private relator; but it will be granted only after a rule to show cause; and it is within the discretion of the Court, and will not be granted in all cases, even though the incumbent was ineligible, and the relator a citizen of the corporation, entitled to vote in the election of the officer.

2. Where such a writ was granted after notice, without a rule, a motion to quash will be entertained.

3. Quære, where a charter requires residence within the city for two years previous to an election, as a qualification for office, whether a citizen elected to an office under the city authorities, which required his residence without the city limits, and which residence was changed until his resignation, ceases to be qualified for the former office, by reason of non-residence.—Per GIBSON, C. J., he does not.

*Dec.* 12.—*Jan.* 8.   A notice having been given to counsel of the intention to move for a writ of *quo warranto*, on the appointed day the suggestion, verified by the oath of one of the relators, was read, and the writ granted without argument or opposition.

The defendant then moved to quash the writ, because, 1. It was issued *ex parte*, without a rule to show cause or a hearing. 2. Because improper parties are seeking to use the process of the Court. 3. Because they have mistaken the remedy.

The suggestion was filed at the instance of Buchanan and Durnell, alleging that they were residents of the city of Philadelphia, and qualified electors thereof. It set forth the Act of Assembly incorporating the city of Philadelphia, and the Act requiring the electors thereof to vote for and elect " one person who should have resided at least four years next preceding said election within this Commonwealth, and the last two years thereof in the said city, to serve as mayor of said city, for the term of one year." That the electors did vote for a mayor, and 6429 of such electors did give their vote for Joel Jones (the defendant), as mayor, and 6364 of the electors gave their vote for one Charles Gilpin. It was further averred, that " Joel Jones had not resided for the two years next preceding the election in the said city of Philadelphia, but took up his residence in that part of the county of Philadelphia called the District of Penn, and not within the bounds of the city of Philadelphia, to wit, on the 17th Dec., 1847, and there continued to reside until the 1st of June, 1849," he having been elected by the Directors of the Girard College, President of said College, under an ordinance of the Councils of the city, which ordinance required that the President of the College should reside in one of the College buildings,

2 H 2

supply his own table, fuel, and furniture, and receive a salary. That Joel Jones occupied the office, and entered upon the discharge of its duties, and took up his residence within the walls of the College, making it the home of himself, his wife, children, and domestics. That he there continued to reside until within two years prior to his said election, and until his resignation of that office.

That notwithstanding his non-residence as aforesaid and the Act of Assembly, and his ineligibility for that cause, he had assumed the office of mayor, &c.

On behalf of the respondent, evidence was taken and read, under objection, tending to show that the relators had been by the respondent, acting as mayor of the city, dismissed for drunkenness, from offices held by them in the police of the city.

*Wm. L. Hirst* and *Dallas*, for the motion to quash.—The writ is of grace, and is grantable only on a rule to show cause. If the Act of 1836 in words authorized it without limitation, they would be construed so as to preserve the former practice, as was done in Commonwealth *v.* McGinnis, 2 Wh. 113, on the right to remove indictments from the Quarter Sessions. But this is not the case. The Act preserves the power as theretofore exercised, and allows the writ to issue by leave of the Court. The language is substantially the same as in the 4 & 5 W. & M. c. 18, s. 2, 9 Ann. c. 20, § 4; and under them the practice is to grant a rule to show cause, and on the hearing to exercise an *absolute discretion:* Wilcox on Munic. Corp. § 401. The defect in the defendant's title is not alone considered, but the expediency of allowing or stopping the prosecution: 3 Step. N. P. 2440. Instances of this are found in 8 Ad. & E. 420, n.; 6 Ib. 475; 4 T. R. 381; Strange, 1196; 11 Ad. & E. 9. The conduct of the relators, or circumstances such as have occurred here, have been considered sufficient reasons for refusing the writ: 4 Burr. 2120; 3 Step. N. P. 2434; and so also the question of utility to the public: Wilcox on Corp. § 401; 2 B. & Ad. 344; 14 S. & R. 216; 15 Ib. 130; 11 Ib. 74.

The preliminary rule is not required but in the case of a private prosecution: 7 Barr, 34; for, being a public officer, it is not to be presumed the Attorney-General will interfere unnecessarily: 3 Step. N. P. 2433.

2. Informations which in practice superseded the writ at common law, could only be used by the Attorney-General: 3 Black. Com. 263; and though now they are used to try rights on the suggestion

of private persons, that is by the statute of Anne, Steph. N. P. 2434, 11 S. & R. 74; this Act is not in force here. But the Act of 1836 allows writs of *quo warranto* where informations had been used. But the present is not included in any of the classes of cases in which by that Act a private relator may proceed. And in all others the Attorney-General must be the relator : Commonwealth *v.* Burrell, 7 Barr, 34. They must then show that they would have had the right before that time. But, as is shown in that decision, the present case is not one in which the right is granted to a private relator.

This office is judicial, and is within every reason which was there held to exclude the right of a private person to interfere.

3. The remedy was with the councils, who, by the charter, are constituted the judges of the election : Act 1789, § 11; City Ord. 75.

But, in fact, no objection is set forth in the suggestion to the exercise of the office. The residence is not alleged to have been permanently changed. It was clearly only intended to continue so long as the office was held under the authorities of the city. The *animus manendi* is the hinge of the controversy, and nothing is averred respecting it.

*G. M. Wharton* and *F. W. Hubbell,* contrà.—The writ was granted according to the practice established, and the express direction of the statute. There was notice given, a motion and an allowance of the writ after the Court heard the suggestion. The relators are interested, for they are voters, and the office is a local one, held under a municipal corporation. It has no relation to the Commonwealth at large, nor is any one interested therein but a citizen of the city ; and every citizen has a legal interest in it. It is no more judicial than that of sheriff, coroner, or recorder, &c. *Primâ facie,* the defendant is without title, and questions arising out of his secret intentions, contrary to the natural inference from his acts, may be deferred until he has told us what those intentions were. The Court cannot possibly draw such inferences.

The Act allows the writ wherever the Court had theretofore possessed the power of granting informations. What was that power ? It was exercised in the case of a justice of the peace on behalf of a private prosecutor : Resp. *v.* Griffith, 2 Dall. 112; Resp. *v.* Prior, 1 Yeat. 206 ; in the case of a county treasurer : Resp. *v.* Wray, 3 Dall. 490 ; 2 Yeat. 429 ; Commonwealth *v.* Reigart, 14 S. & R.

216; a recorder of the city: Commonwealth v. Dallas, 3 Yeat. 300; inspectors of the prison: Commonwealth v. Douglass, 1 Binn. 77; clerk of the market: Commonwealth v. Smith, 4 Ib. 117; trustees of a church: Commonwealth v. Sprenger, 5 Ib. 353; collector of city taxes: Commonwealth v. Brown, 1 S. & R. 382; vestrymen of a church: Commonwealth v. Woelpper, 3 Ib. 29; Commonwealth v. Cain, 5 Ib. 510; trustees of an incorporated church: Commonwealth v. Arrison, 15 Ib. 127; commissioners of the township of Moyamensing: Commonwealth v. McCloskey, 2 Rawle, 369. All of which preceded the Act of 1836, and were prosecuted by private relators. Since the Act, in the following instance the writ has been granted:—commissioner of the Nicholson Court: Commonwealth v. Primrose, 2 W. & S. 407. In Commonwealth v. Burrell, 7 Barr, 34, it was held that officers elected by the people at large, or appointed by the Governor, could not be compelled to answer private suggestions. But municipal offices are excluded in terms from that rule: Ib. p. 39. And it is further declared that the substance of the statute of Anne has been adopted as part of our common law.

2. The office is one clearly within the equity of the clause embracing " county and township offices," for the city is a part of the county, Act 1834, § 2. The extent of population is immaterial; the same objection would exist to every office within the city or county. The judicial character of the office is immaterial. A recorder was formerly a judge, and yet he was liable to the writ, as has been shown. The vexation of litigation is best avoided by not palpably and openly breaking the law.

3. The office is one of " a corporation having its chief place of business within the county." It is extensively engaged in business, having gas and water works, railroads and coal lands, and is a trustee of large estates.

The remedy is not with the councils; they have no office but the ascertainment of the number of the votes cast, not the eligibility of the candidates. But if this were doubtful, the right of the Court to determine the question is not taken away: 2 S. & R. 363; 3 Yeat. 479.

As to the argument that this Court has a discretion to grant or refuse the writ, we do not deny it when properly understood. Under a government such as ours, judicial discretion in granting or withholding process, can only mean that a clear legal right by legal parties should be first established. When these are proved, the writ allowed by a statute is of course. It was never intended that

this Court should have the power of permitting a violation of the law, and refusing to allow a prosecution by a competent party, because of their private opinions as to the wisdom of the broken law, or the motives or character of the prosecutors. It is submitted no such power exists under the sanction of this government.

*Jan.* 28. GIBSON, C. J.—The writ of *quo warranto* under the Act of 1836, is not more a matter of right than is the *quo warranto* information under the statute of Anne. The legislature has spoken guardedly on the subject. "Writs of *quo warranto* MAY be issued by the Supreme Court," and "writs of *quo warranto* MAY be issued by the Common Pleas," is language so circumspect as to convince us that the intention was to give the same control over the writ which the Court had exercised over the information. The object was to combine in it all that was valuable in the ancient writ, with all that was convenient and proper in the *quo warranto* information. The Constitution provides that the Executive *may* remove a judge on the presentation of a legislative address; yet, on a memorable occasion, Governor McKean—a great authority— who had been the first Chief Justice under the Constitution of 1790, had the noble independence, against a gush of popular passion, to disregard it. The obvious intent of the legislature was to put the substance of the information into the form of a writ to be issued at the discretion of the Court.

Now it is well known that an information at the suggestion of a relator was always preceded, in this Court, by a rule to show cause, as it is in the Queen's Bench at this day. The Court itself stood as an inquest, between the accuser and the accused. No man would submit to be the dispenser of corporate patronage, if nothing else were between him and vexatious prosecution, than the magnanimity and justice of the displaced officer or disappointed applicant. The highest magistrate in the government, or the lowest individual in the community, may not be put to answer before he has had the inculpatory evidence submitted to an inquest; in the one case the House of Representatives, in the other, a grand jury; and it would be strange if the law did not give the first magistrate of a great municipal corporation the same protection. The code of the free- man gave it to him, and the representatives of freemen have not taken it from him. Whatever change was made in matters of form, the legislature held fast to the substance of that jurisprudence which is the only sure foundation of rational liberty. Speaking

thus, I do not forget that the English practice, in this particular, is founded on the words of the statute of Anne; but our own practice borrowed from it, was adopted as a part of our peculiar common law, after it had been proved, by use in the English Courts, to be convenient, just, and good.

The practice under our statute, however, has been wrong. The writ has inadvertently issued on the filing of the suggestion, and consequently improvidently; so that it would be impossible to resist a motion to quash for that reason alone. But the ground of the prosecution may, at the same time, be examined as if the case stood on a rule to show cause. The eye of the Court had not been directed to the irregularity, but henceforth it shall be avoided.

Now a Court will refuse its leave to issue a *quo warranto* writ, wherever it would have refused its leave to file a *quo warranto* information. Before the accession of Lord Mansfield to the chiefship of the King's Bench, it was the practice to file almost of course; but in Rex *v.* Wardroper, 4 Burr. 1964, he put his hand on it, saying that "the stat. 9 Ann. c. 20, had a view to the speedy justice to be done against the usurpers of offices in corporations, as well as to quiet the possession of those who had right; and that act," he said, "does not leave it to the discretion of the officer (the master of the crown office), as it was before, but puts it in the discretion of the Court; therefore the Court must exercise a discretion. It would be very grievous if the information should go of course, and it would be a breach of trust in the Court to grant it as of course." In Rex *v.* Dawes, Ib. 2022, the same was said in substance; and in Rex *v.* Sargent, 5 T. R. 457, Lord Kenyon approved of it. There are several cases in which leave to file was refused, though there was a clear defect in the incumbent's title. Thus, in Rex *v.* Parry, 6 Ad. & Ell. 810, where no answer was given to an objection to it, the Court refused even a rule, because no fraud was imputed; because no mischief appeared to have been done, and because the object of the relators appeared to be a dissolution of the corporation. In Rex *v.* Bond, 2 T. R. 767, as well as in Rex *v.* Trevanen, 2 B. & A. 479, it was said that leave will not be given when the circumstances induce a suspicion of the relator's motive: Rex *v.* Trelawney, 3 Burr, 615; Rex *v.* Midlecoat, 2 Barnard. 221; Reg. *v.* Archdall, 8 Ad. & Ell. 281, and some other cases, are to the same general effect.

What mischief then has been done in this instance by the choice of an ineligible mayor, if he be so? and who are they that come

here to complain of it? They do not pretend that he does not discharge the duties of the office with integrity and ability; or that the interests of the corporation are jeoparded by an irregular or improper exercise of his functions. All the corporators but two, are satisfied with him. A constituency of a hundred thousand souls are willing to dispense with a provision in the charter for their benefit. The councils, the chartered guardians of their rights, have not moved; the corporate functionaries have not moved; and the unsuccessful candidate has not moved. Only two corporators demand a scrutiny; and who are they? It would be too much to say they are actuated by public spirit, or even by their own interest. They were dismissed from office, not for partisanship, but, as appears in the affidavits, for personal habits that unfitted them; and they could not expect to regain their places should the respondent be ousted. There is but one appetite to which the prosecution can be referred; and to the gratification of it, a Court will never lend itself. It would waste its time and the public money, as well as disturb the public repose, did it interfere for a defect of title so unproductive of consequences. In Rex *v.* Brown, 3 T. R. 574, it was said by Mr. Justice Ashurst, that "when the application is made to disturb the local peace of the corporation, it is right to inquire into the motives of the party, to see how far he is connected with the corporation." I take it for granted, though it does not appear in the proofs, that the relators are entitled to vote at the charter election; but their present interest in the event, whatever it may have been while the question of patronage was an open one, is merely theoretic.

Another matter which weighs with me—but as it was not pressed at the argument or brought up at consultation, I speak only for myself—is that it is far from clear that the defendant's possession is not entirely legal. He was sent by this very corporation beyond the limits of the city proper, to execute the duties of a corporate office; and it would be a severe application of the law of domicile to make his acceptance of it a disqualification for two years to come. A distinguished counsel who has argued for him, was not thought to have lost his domicile here by his residence with his family as American Minister near the Court of St. Petersburgh; and I believe no greater consequence has been attributed to the residence of a federal officer in the District of Columbia. The doctrine seems to be that if the office was irrevocably conferred for life, the law fixes the domicile at the place where the functions are to be performed;

but that, if it be temporary or revocable, the presumption is against a change : Phillimore on Domicile, 61–2.

The decision of the preceding point, renders the decision of the others unnecessary.

Writ quashed.

COULTER, J., dissented, and gave his reasons at some length; but the Act of Assembly forbids their publication here.