## Hackney's Petition

MARGIOTTI, Attorney General, April 6, 1936. — This matter comes before us on the petition of John C. Hack-

ney, of Fayette County, Pa., requesting the Attorney General to file, as relator, a suggestion to the Supreme Court of Pennsylvania that a writ of quo warranto issue, directed to Hon. Thomas H. Hudson, the president judge of the courts of Fayette County.

The petition alleges that the said Thomas H. Hudson did, during his unsuccessful primary campaign of 1925, violate the election laws of the Commonwealth, and that he again violated the said election laws in his successful primary and general election campaigns of 1927, at which time he was nominated and elected judge of the Court of Common Pleas of Fayette County, and that by reason of his said unlawful acts he is disqualified from holding the office of judge and should be ousted therefrom.

Hearings on this matter were held before us on July 5, 1935, and October 9, 1935. From the evidence adduced, we find the following facts.

Mr. George Hibbs was Judge Hudson's campaign manager in the 1925 primary campaign. In this capacity, he rented an office, directed campaign activities and spent large sums of money which had been entrusted to him and placed in a safe deposit box rented in his name. At least seven or eight thousand dollars were distributed from this fund, for which no receipts were taken. In that campaign, approximately sixty thousand dollars were spent in attempting to procure Judge Hudson's nomination. This money was dispensed with Judge Hudson's knowledge and authority for unlawful purposes, to wit, the purchase of votes, liquor, etc. No receipts were taken for the sums so expended.

Judge Hudson filed his primary campaign account for the 1925 campaign in the office of the clerk of courts of Fayette County, where it remained two or three days until one of Judge Hudson's law associates, Joseph J. Bear, removed the account from the clerk's office. To date the account has not been returned to the proper files. The amount which Judge Hudson's account would

indicate was spent in this campaign was much less than that actually distributed by his representatives.

The evidence clearly indicates that in the primary campaign of 1925 Judge Thomas H. Hudson, through individuals interested in his nomination, spent much larger sums of money than were shown in his account, and that most of that money was spent in an unlawful manner and for improper purposes.

With reference to the 1927 primary, we find that that campaign was managed by Ray Shelby, who was in charge of the disbursement of funds, and that Judge Hudson boasted of the fact that Mr. Shelby was his campaign manager and that he was spending plenty of money. In one instance, $4,500 was given to an individual to take care of a district which polled approximately one thousand votes, and this money was used for the purpose of buying liquor and votes and bribing election boards.

From the evidence we find that a large sum of money was spent during the campaigns of 1927 which was not accounted for, and that this money was spent for unlawful purposes with the knowledge and consent of Judge Hudson.

At least a prima facie case has been made out in support of this petition. Judge Hudson took the witness stand but refused to give any material testimony, claiming his constitutional rights and alleging, through counsel, that he refused to testify on the ground that his testimony might tend to incriminate him. This he had a right to do. However, he was present during this entire proceeding; he heard the numerous charges of violations of the election laws which were made against him and his representatives. If he had seen fit to do so, he could have taken the stand and explained the circumstances regarding every material charge which was made. However, by relying upon his constitutional rights and refusing to testify, he has placed himself in a position where the prima facie case made out by the petitioner has not been sufficiently denied.

Although a prima facie case has been made out against Judge Hudson, there are other matters which must be taken into consideration in disposing of this petition.

The petitioner, John C. Hackney, knew all the facts that he has alleged for a period of at least eight years, and did not bring this petition or press this cause until criminal proceedings for embezzlement were instituted against him, which resulted in his conviction and sentence to a prison term by Judge Hudson. The evidence indicates that the action of the petitioner in instituting the present proceeding was prompted purely by a desire for revenge.

Judge Hudson has served as a judge of the Court of Common Pleas of Fayette County since 1925. He was first appointed to that office, and on the first Monday of January 1928, he began a 10-year elective term. A relatively short period of his term remains. During the 10 years that Judge Hudson has served on the bench many matters of public interest have been passed on by him, and many important matters are now pending before him. There has been no movement on the part of the public generally for his removal, and no complaint has been made that he is not exercising his office in a proper and judicial manner.

A quo warranto proceeding is not a matter of right, but is always discretionary with the court. The court must take into consideration, before exercising its discretionary powers, how the public would be affected. The motives of the petitioner are an obvious and important item for consideration. If the term of office is about to expire, the court wisely uses its discretion in refusing quo warranto proceedings. The court may find that the public interest may not be served by permitting quo warranto proceedings, or it may refuse leave or decline to entertain proceedings as a matter of public policy or convenience, or because of certain conduct on the part of the applicants which precludes them from pressing the matter. Circumstances tending to throw suspicion on the

relator, long and unnecessary prejudicial delay, or acquiescence on the part of the persons complaining, or the public generally, are sufficient grounds for the court, in the exercise of its discretion, to refuse to entertain quo warranto proceedings.

In Commonwealth v. Jones, 12 Pa. 365 (1849), Chief Justice Gibson said, at pages 370, 371:

"What mischief then has been done in this instance by the choice of an ineligible mayor, if he be so? and who are they that come here to complain of it? They do not pretend that he does not discharge the duties of the office with integrity and ability; or that the interests of the corporation are jeoparded by an irregular or improper exercise of his functions. All the corporators but two, are satisfied with him. A constituency of a hundred thousand souls are willing to dispense with a provision in the charter for their benefit. . . . It would be too much to say they are actuated by public spirit, or even by their own interest. They were dismissed from office, not for partisanship, but, as appears in the affidavits, for personal habits that unfitted them; and they could not expect to regain their places should the respondent be ousted. There is but one appetite to which the prosecution can be referred; and to the gratification of it, a Court will never lend itself. It would waste its time and the public money, as well as disturb the public repose, did it interfere for a defect of title so unproductive of consequences. In Rex v. Brown, 3 T. R. 574, it was said by Mr. Justice Ashurst, that 'when the application is made to disturb the local peace of the corporation, it is right to inquire into the *motives of the party,* to see how far he is connected with the Corporation' ". (Italics ours.)

In Commonwealth, ex rel., v. Luker, 258 Pa. 602 (1917), the court held, at page 607, that:

"The authority just cited involved a public office, and both there, and in numerous other such cases, we have said that a court's exercise of discretion in refusing a quo warranto would not be reviewed. In that particular class

of cases (involving public office) we have gone even further and held that the motive of the relator might be considered by a court in exercising its discretion as to the issuance of the writ".

51 C. J. 328, sec. 27, deals with this point in the following language:

"In exercising its discretion, the court may and should consider all the circumstances of the case, the motives of the relator in having the proceeding instituted, the time which has elapsed since the cause of complaint occurred, and whether the public interest will be served by allowing the information to be filed; and it may refuse leave or decline to entertain the proceeding upon considerations of public policy, interest, or convenience".

The Attorney General is bound to execute the office entrusted to him by exercising the same sound discretion in matters of this nature that the courts exercise. He must use his office in such a way as to further the interests and convenience of the public and is bound to exercise his judgment in such a way as not to lend the power of his office to a movement which would be to the disadvantage of the public generally.

In French's Petition, 12 Dist. R. 703 (1903), former Attorney General Carson said, at page 710:

"An application to the attorney-general for the use of the name of the Commonwealth is in the nature of a hearing for a rule to show cause. The granting of it is not a matter of right. It must be controlled by the discretion and judgment of that officer. He should not abdicate his office and surrender its powers to all those who would like to wield them. That would be to place in the hands of the petitioners in all cases the administration of the attorney-general's department. That cannot be permitted. It must be the official judgment and discretion of the attorney-general which governs his acts, after having patiently heard the parties and their counsel."

Therefore, although the petitioner has made out a prima facie case, we are of the opinion that this petition

was prompted by a desire for revenge, that the public's interests, convenience, and welfare do not call for quo warranto proceedings at this late date, and that to pursue the proceedings further would be an imposition and inconvenience to the public and against its best interests.

And now, April 6, 1936, the petition of John C. Hackney, requesting the Attorney General to file, as relator, a suggestion to the Supreme Court of Pennsylvania that a writ of quo warranto issue directed to Thomas H. Hudson, the president judge of Fayette County, Pa., is hereby dismissed.　　　　　　　　From Frederic Ray, Harrisburg.