RICHARD D. CHOMEAU (CONTESTANT), APPELLANT, v. GEORGE ROTH (CONTESTEE), RESPONDENT.—72 S. W. (2d) 997.

St. Louis Court of Appeals.  Opinion filed June 15, 1934.

*Glendy B. Arnold* and *Philip A. Foley* for appellant.

*Peter T. Barrett* and *Walter Wehrle* for respondent.

BENNICK, C.—This is an appeal by the contestant from the judgment and decision of the Circuit Court of St. Louis County for the contestee in an election contest.

It appears that at the general election of April 5, 1932, for elective municipal officers, contestant, Richard D. Chomeau, and contestee, George Roth, were, respectively, candidates for election to the office of collector of the City of Clayton, to hold office for a term of two years from and after April 12, 1932. According to the certificate of the city clerk, the election resulted in the election of contestee by a majority of 149 votes, he having a total of 1,325 votes as against contestant's 1,176 votes. Upon the recount it appeared that contestant received 1,163 votes as against contestee's 1,323 votes, giving the latter a majority of 160 votes.

In due course the present proceedings to contest the election were begun by contestant, the sole ground of contest being that some 530 votes had been illegally cast at the election by persons who were not at the time qualified voters of the City of Clayton, not being residents thereof. Actually the contests involved only 219 votes which were challenged by contestant on recount, all of such votes having been cast by students of Concordia Seminary, a Lutheran theological school, located at 801 De Mun Avenue, in Ward 5, Precinct 2, of the City of

Clayton. Of such 219 contested votes, it appeared upon the recount that 211 had voted for contestee and 8 for contestant, so that if all of such votes would be thrown out as having been illegally cast upon the ground assigned by contestant, the result would be the election of contestant over contestee by a majority of forty-three votes.

Despite the importance of the question of a particular person's intention as to residence in determining his right to vote at a given election, this case has not been tried upon the theory of testing out the qualification of each individual student whose right to vote has been challenged by the contest, but rather upon the question of the qualifications of the student body generally, the nature and character of Concordia Seminary itself considered.

The evidence discloses that the students attending the seminary are all members of the Lutheran faith, and that the sole function of the seminary is to educate young men for the ministry in the Lutheran Church. The students are given a special training for a number of years at preparatory schools located at various parts of the country, following which they come to the seminary for the regular theological course of three years. Whether or not the course will be completed in three years depends upon the work of the individual student. Upon his matriculation, neither he nor the school authorities can know for what length of time he will be a student at the school. He may finish in the prescribed period of three years, and then sever his connections with the school, unless he stays over for the graduate course of one year which the seminary offers when conditions require it and make it possible. If he fails in any of his examinations, he must, of course, return and make up the deficiencies in his credits, whatever they may be.

When the student leaves his home to come to the seminary, he comes with the intention of not returning to his home permanently. Upon his graduation, he is subject to call to one of the Lutheran congregations or missions in any part of the world, such call being made through an assignment board. Ordinarily he is assigned to the ministry, although it is not absolutely certain that he will receive such an assignment. Only one Lutheran church is located within the corporate limits of the City of Clayton.

At the time of the election in question there were approximately 440 students enrolled in the seminary. In almost every instance the students reside in the dormitories, two students occupying a suite of two rooms. In rare instances, students whose parents reside in the neighboring City of St. Louis live with them while in attendance, but even some of the St. Louis students likewise live in the seminary buildings. While residing in the dormitories, the students room there, eat there, and receive their mail there. They are under the supervision and control of the school authorities while enrolled in school, and are

not permitted to leave what is called greater St. Louis without permission. They are required to be present at classes, and to be in the dormitories by midnight, unless excused; and only for what is considered by the authorities as a very good reason are they permitted to spend nights away from the seminary in the immediate community.

So far as concerns the question of their maintenance, it appears that about two-thirds of the students are supported by their parents, and one-third not. What the status in this respect may have been of any individual student whose right to have voted is challenged in this proceeding is not disclosed.

When each student enrolls, he is required to fill out a blank giving information for the school's records, such information consisting, among other things, of his name, birthplace, birthday, parents' names, and "present address." From such blank the dean's office makes up enrollment cards. Apparently the seminary itself regarded the term "present address" on the information blanks as synonymous with "home address," for it so used the latter term in making up the enrollment cards. Suffice it to say that neither the seminary nor the City of Clayton was given as the "home address" of any student whose right to vote at the election in question is under inquiry. The introduction in evidence of the enrollment cards came over contestee's objection, the court's ruling being that they furnished some evidence upon an issue in the case.

The only direct evidence upon the question of intention was the testimony of the dean that the students always considered Concordia Seminary as their home, and while there, as in this instance, exercised the right of suffrage.

The principal witness for the contestee was one of the judges of the election. He testified that he interrogated the students from the seminary who presented themselves to vote at the election; that he questioned them about where they had come from, and how long they had been in attendance at the school; that they stated that they lived and made their home at the seminary; and that upon such statements the judges permitted them to vote. Such students as had originally come from the City of St. Louis, the judges arbitrarily denied the right to vote upon the theory that they were too near St. Louis to call the seminary their home. Obviously, such proximity to their parents' homes would be a matter to be considered upon the question of residence, but it could not of itself be conclusive upon it. Likewise, the judges arbitrarily required of the students a residence of two years in the City of Clayton as a qualification for voting. This, apparently, in disregard of the constitutional and statutory provisions that one year's residence in the State and sixty days' residence in the city suffice to qualify a voter in the matter of his residence.

Tried to the court, the finding and judgment for contestee; and con-

testant's appeal therefrom, all followed as has been heretofore indicated.

Pointing out that upon undisputed evidence (though warranting different inferences), the question at issue is one of law for our determination, contestant argues that the students whose right to vote is challenged did not and could not establish a voting residence in the City of Clayton by merely taking up residence, as students, on the premises of the seminary, notwithstanding the fact that they may have boarded and lodged there for one year before presenting themselves to vote. In the light of all the facts and circumstances in evidence, including the fact of taking up residence at the seminary, we think no such conclusion necessarily follows.

The fact that the challenged voters were students is in and of itself not at all decisive of the case. Our Missouri Constitution provides in article 8, section 7 (Const., art. 8, sec. 7, p. 677), that for the purpose of voting, no person shall be deemed to have gained a residence by reason of his presence, or to have lost it by reason of his absence, while a student of any institution of learning. So the Constitution leaves the student much as it finds him, permitting him either to retain his original residence for voting purposes, or to take up a residence wherever his school is located if he so elects. In other words, mere physical presence at the school is not enough either to gain for him a voting residence at the school, or to cause him to lose his existing voting residence at his home, the whole question, as in all similar situations, being largely one of intention, to be determined not alone from the evidence of the party himself, but in the light of all the facts and circumstances of the case. [Hall v. Schoenecke, 128 Mo. 661, 31 S. W. 97; Goben v. Murrell, 195 Mo. App. 104, 190 S. W. 986.]

The two cited cases, and particularly the former, control this case in all essential respects. As they announce the law, it is entirely possible for a student to gain a residence at the place where he is attending school, although he may have gone there for no other purpose than to attend school, the question of whether a change of residence is effected depending upon the intention with which the removal from the former residence was made. A temporary removal for the sole purpose of attending school, without any intention of abandoning his usual residence, and with the fixed intention of returning thereto when his purpose has been accomplished, will not constitute such a change of residence as to entitle the student to vote at his temporary abode. But conversely, an actual residence, coupled with the intention to remain either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode, is sufficient to work a change of domicile. [Nolker v. Nolker (Mo. Sup.), 257 S. W. 798; Finley v. Finley (Mo. App.), 6 S. W. (2d) 1006.]

Now in this case, when the students entered the seminary, they at

least came, so there was evidence to show, with the fixed intention of not resuming their respective residences at their former homes after graduation. Upon enrolling at the seminary they knew only that they were abandoning their former residences, and that they would reside at the seminary, not permanently, but for an indefinite time, depending upon the promptness with which they might complete the course, and upon whether they might subsequently take the postgraduate course. The abandonment of the former residence is the important factor; and the necessity of ultimate removal from the seminary should not affect the result. If, as the evidence shows, upon matriculation at the seminary the students abandoned their former residences, entering the school with the fixed intention of not returning to their original homes permanently, are they to be disfranchised from thenceforth until they acquire a residence after graduation? We think not. Rather, the policy of the law is to construe election laws liberally in aid of the right of suffrage.

And in this view of the case, not only had the particular students abandoned their former residences upon entering the seminary, as there was evidence to disclose, but they presented themselves as voters at the proper precinct in the City of Clayton, declaring to the election officials in charge thereof that they regarded the seminary as their place of residence. We grant that such statements on their part were not conclusive upon the question of their intention, but the evidence thereof, together with the other matters we have heretofore dwelt upon as significant, amply warranted the trial court in finding, as it did, that they were qualified to vote. If, as is said in Goben v. Murrell, supra, residence for voting purposes must have some connection or identification with the community, such connection or identification could not better be evidenced than by a participation in the community's public affairs by those who claim no other community as their residence.

The judgment rendered by the circuit court should be affirmed; and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.

### ON MOTION FOR REHEARING.

BENNICK, C.—Learned counsel for the appellant (contestant) have filed a motion for rehearing in which, among other things, they complain most earnestly of our reliance upon the cases of Hall v.

Schoenecke, 128 Mo. 661, 31 S. W. 97, and Goben v. Murrell, 195 Mo. App. 104, 190 S. W. 986, as controlling this case in all essential respects.

We are aware that the facts of those cases are not on all fours with the facts of the case at bar in many material features; and what we had in mind in referring to those cases as controlling was simply that the rules of law announced in those cases were sufficient to govern the determination of this. Concededly the students involved in Hall v. Schoenecke were ultimately denied the right to vote, but the judgment entered in the Supreme Court was but one of affirmance of the finding of the trial court upon an issue of fact as to the intention of the individual students in claiming the college town of Tarkio as their residence. In other words, the Supreme Court approached that case upon an appeal from the judgment of the circuit court rejecting the votes of the students, and held that upon an issue of fact as to residence there was substantial evidence to support the lower court's finding; but in so doing, the Supreme Court nevertheless took occasion to point out, as we ourselves have pointed out in our principal opinion, that the question of residence is largely one of the particular person's intention, and that whether a change of residence is effected in any given instance depends upon the intention with which the removal from the former residence was made. Here, however, we have the directly contrary situation, where the trial court, upon evidence warranting conflicting inferences as to the question of change of residence, has refused to interfere with the action of the election officials in according the students in question the right to vote, and where we, as an appellate court, must uphold the judgment of the trial court if the facts and the law may be said to warrant its affirmance.

Likewise, in Goben v. Murrell, the students at the American School of Osteopathy in Kirksville were denied the right to vote; but regardless of what else may be said for or against the result of that opinion, one highly material element, which is present in this case, was lacking from the agreed statement of facts upon which such opinion was based, which was the element of permanent removal of the students from their former residences.

Nor is our decision in this case to be construed as denying to any one the privilege in the future of challenging the right of any individual student in Concordia Seminary to vote in the City of Clayton. We repeat that this case has not been tried and presented upon the question of the right of any individual student to have voted, depending upon whether he personally had established a bona fide residence in the City of Clayton. Rather, the case has been fought out solely upon the question of the voting qualifications of members of the student body at large, the nature and character of the school

itself considered. All that we have held is that while the mere fact that the challenged voters were students at the seminary neither deprived them of, nor in and of itself gained for them, the right to vote in the City of Clayton, yet if they permanently abandoned their former residences upon matriculating at the seminary and thereafter regarded it as their present abiding place, it necessarily must have become their place of residence for voting purposes because under such circumstances they could have claimed no other voting residence. And, of course, whether the facts and circumstances attending the case of any individual student meet such test will be a matter for the election officials to determine when such student presents himself to vote and his right to vote is challenged.

It is no doubt true, as counsel suggest, that the votes of so many students may prove an important factor in determining the result of elections in the City of Clayton; but that such may be the case is obviously no ground for denying them the right of suffrage if they otherwise possess the required qualifications. It may also be true, though the record is silent upon the question, that the students neither own property nor pay taxes in the City of Clayton; but the best answer to this suggestion is that such matters have not been prescribed as necessary qualifications for voters. In any event, the students, along with all other persons, are amenable to the laws, and are entitled to the enforcement of the laws for the protection of their persons and such property as they possess; and consequently the students, along with all other persons, have an interest in the election of such candidates to office as in their opinion are best qualified for the positions they seek and will fairly and justly strive to maintain the governmental structure.

Appellant's motion for rehearing should be overruled; and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Appellant's motion for rehearing is, accordingly, overruled. *Becker* and *McCullen, JJ.,* concur; *Hostetter, P. J.,* absent.