JESSE W. BARRETT, ALPHONSE G. EBERLE, WILLIAM E. BUDER, and A. SIDNEY JOHNSON, as Members of and constituting and composing the BOARD OF ELECTION COMMISSIONERS of the City of St. Louis, v. OSCAR R. PARKS, Appellant.—No. 38561.

JESSE W. BARRETT, ALPHONSE G. EBERLE, WILLIAM E. BUDER, and A. SIDNEY JOHNSON, as Members of and constituting and composing the BOARD OF ELECTION COMMISSIONERS of the City of St. Louis, v. OTTO RICHTER, Appellant.—No. 38562.

JESSE W. BARRETT, ALPHONSE G. EBERLE, WILLIAM E. BUDER, and A. SIDNEY JOHNSON, as Members of and constituting and composing the BOARD OF ELECTION COMMISSIONERS of the City of St. Louis, Appellants, v. HASTINGS PATRICK COX.—No. 38563.—180 S. W. (2d) 665.

Division Two, April 3, 1944.

Motion to Modify Opinion or to Transfer to Banc Overruled, June 5, 1944.

*Fred J. Hoffmeister* for appellant, Oscar R. Parks.

*Joseph F. Holland,* City Counselor, and *George L. Stemmler,* First Associate City Counselor, for appellants Jesse W. Barrett et al., constituting and composing the Board of Election Commissioners for the City of St. Louis.

*Donald E. Lyons* and *James T. Britt* for Harry L. Thomas, Thomas R. Hunt, Herman M. Langworthy and W. F. Woodruff, as Members of and constituting and composing the Board of Election Commissioners of Kansas City, Missouri, *amici curiae.*

 BOHLING, C.—These appeals present for determination the residence of certain individuals for registration and voting purposes in the City of St. Louis, Missouri. The proceedings were instituted by the Board of Election Commissioners of said City filing a petition for a declaratory judgment with respect to a number of the registered voters of the City. The court made a number of declarations. We think in one of the cases that the plaintiff Board failed to sustain the burden of going forward with the evidence and in the other there is no contested issue of law presented for our determination. The questions for determination fall within the following constitutional and statutory provisions;

So far as material here, "all citizens of the United States . . . who have resided in this state one year, and in the county, city or town sixty days immediately preceding the election at which they offer to vote, and no other person, shall be entitled to vote at all elections by the people . . . " Mo. Const. Art. VIII, Sec. 2. (Consult Mo. Const. 1865, Art. II, Sec. 18.) "The General Assembly shall provide by law for the registration of voters . . . in cities having a population of more than ten thousand . . . " Ibid. Sec. 5. Article 24, Chapter 76, R. S. 1939, provides for the permanent registration of voters and the holding of elections in cities of 600,000 or more, which includes the City of St. Louis. Section 12206 thereof is similar to the above quoted Sec. 2 of the Constitution and Sec. 12207 makes registration "as a qualified voter in the precinct" a prerequisite to voting therein.

Section 655, R. S. 1939, prescribing certain rules for construing statutes, provides, with respect to the word residence: "The construction of all statutes of this state shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the legislature, or of the context of the same statute: . . . seventeenth, the place where the family of any person shall permanently reside in this state, and the place where any person having no family shall generally lodge, shall be deemed the place of residence of such person or persons respectively".

 What is meant by the term "reside" or "residence" depends upon the applicable legislative expressions and the purposes under consideration. It is evident that under Sec. 2, Art. VIII, of the Missouri Constitution one may not reside in more than one place for the purpose of exercising the right of suffrage. The cases are to the effect that "reside" or "residence" is a question of fact to be determined from the acts and intentions of the individual citizen and the

words "permanently reside" of Sec. 655 insofar as they influence the issue are not used in the sense that "residence" may never be changed but that there exists no present intention to change it. One's intentions frequently enter where there has been a change of residence or the establishment of a temporary residence or a temporary absence from one's usual residence. Issues involving intentions have most frequently arisen in connection with some individual within the provisions of Sec. 7, Art. VIII of the Missouri Constitution, relating to the gaining or losing of residence while in the services of the United States or of the State et cetera. Conduct is an important factor in determining intention as actions speak louder than words. So, if there exists a discrepancy between declarations of intention and acts, the declarations yield to the conclusion to be drawn from the acts. Chomeau v. Roth (1934), 230 Mo. App. 709, 718, 72 S. W. 2d 997, 999 [4, 5]; Goben v. Murrell (1916), 195 Mo. App. 104, 109, 190 S. W. 986, 988; Hall v. Schoenecke (1895), 128 Mo. 661, 667 (II), 31 S. W. 97 (2); Johnson v. Smith (1869), 43 Mo. 499, 501; Greene v. Beckwith (1866), 38 Mo. 384, 388; State ex rel. Ramey v. Dayton (1883), 77 Mo. 678, 682; McDowell v. Friedman Bros. Shoe Co. (1909), 135 Mo. App. 276, 286, 115 S. W. 1028, 1032; Re Ozias Estate (Mo. App. 1930), 29 S. W. 2d 240, 243 [5-12]; State v. Snyder (1904), 182 Mo. 462, 506 (IV, V), 82 S. W. 12, 26 (IV, V). See also, 37 Ann. Cas. (1915) 792; Elections: 29 C. J. S., p. 39, Secs. 19-25; 18 Am. Jur., p. 216, Secs. 56-69; Domicile: 28 C. J. S., p. 1; 17 Am. Jur., p. 585; Restatement: Conflict of Laws, Ch. 2; 74 Univ. of Pa. L. Rev. 552; Reside—Residence: 54 C. J. 702, 704.

■ *Oscar R. Parks.* Parks has a family. He had an established residence at 5215 ■ Palm street and was a registered voter of the City of St. Louis from said address. He was appointed to and accepted the position of manager of the Lambert-St. Louis Field, a St. Louis municipal airport located in St. Louis county. Section 2 of Article VIII of the St. Louis City Charter, so far as material, provides: "In addition to other qualifications required by this charter, all officers and employees . . . must have resided in the city for at least one year and failing or ceasing so to reside, shall forfeit their office or employment." The City, as part of the compensation of a manager aforesaid, furnishes a residence at the airport. Parks' superior municipal officer required him to use this residence that he might more efficiently perform his duties as such manager. He and his family now live at the airport in the residence furnished by the City. All the evidence, however, is that Parks never entertained an intention of making the airport his permanent residence; that he never had any intention of changing his permanent residence from the City of St. Louis to the county of St. Louis; that he intended to retain his permanent residence in and remain a citizen of the City of St. Louis; that he continued to claim his former permanent residence of 5215

Palm street as his place of residence for the purposes of registration and voting, and, upon the termination of his services as manager aforesaid, that he intends to resume his actual residence within said City. As we read the pleadings and proof the Election Commissioners admit Parks' stated intention. The case is so presented. The court found that there was no circumstance surrounding Parks that would permit of a finding that 5215 Palm street was Parks' residence for the purposes of registration and voting and adjudged accordingly. Parks appealed.

The judgment is erroneous. The burden of proof rested with the Election Commissioners. Under the admitted facts a change of residence was involved, which pivoted on the acts and intentions of Parks. His change of habitation was established but under this record the Election Commissioners failed to go forward and adduce evidence, substantial or otherwise, that the change of habitation was accompanied by any intention to "permanently reside" thereat. Consult Walker v. Walker (1876), 1 Mo. App. 404, 413, 414; Mitchell v. United States, 88 U. S. (21 Wall.) 350, 353. See also Lankford v. Gebhardt (1895), 130 Mo. 621, 637 (VIII), 639 (XI), 32 S. W. 1127, 1130 (8, 11). The facts are peculiar. Parks, a citizen, is selected as an employee to perform a municipal public duty (recognized by statute and court decision to be within proper municipal public purposes and necessities—see Ch. 123, Art. 3, Secs. 15122, 15126, 15124, R. S. 1939; Dysart v. St. Louis (Banc, 1928), 321 Mo. 515, 525 (II), 11 S. W. 2d 1045, 1049 [3] ), and required by the City to live beyond its boundaries upon its property for the more efficient discharge of the municipality's public purposes and necessities. In these circumstances the law is not so harsh as to forfeit Parks' established residence for the purpose of suffrage in the City while he temporarily resides on municipally owned property outside its boundaries for the purpose of discharging its municipal duties of a public necessity nature and with his continued intention to retain his municipal citizenship conceded. So far as disclosed, Parks' appointment was temporary or revocable and not for life. If the latter, a presumption of change of permanent residence might readily follow; but if the former, the fact of change should not be presumed but should be established by proof. Consult Commonwealth v. Jones, 12 Pa. St. 365, 371.

*Hastings Patrick Cox.* The Board of Election Commissioners appealed from a judgment establishing Mr. Cox's voting residence at 2861 North Grand boulevard. Cox is single. He is engaged in the saloon business at said address. He rented the premises and subleased the upstairs but retained one of the rooms for sleeping purposes. He occupies it whenever he feels like it, which he testified was two or three times a week. He also owns a bungalow at 2736 Belt avenue, where his father and brother reside. When he does not sleep at the Grand boulevard address, he sleeps mostly at his father's. He

stated the furnishings in the Grand boulevard room consisted of a bed; that he did not necessarily keep his clothes there; that he kept some of his clothes at the place of business and his street clothes at his father's; that he thought he had a right to vote from the Grand boulevard address, claimed it as his residence, voted from no other place, and had been living at and registering from the Grand boulevard address for the past ten years. While the greater weight of this evidence, which is not as satisfactory as we ▉ think it should be, might tend to establish the Belt avenue address as the voting residence, still if the court were influenced, for instance, by Cox's continued living and registering from the Grand boulevard address in reaching its conclusion, we may not interfere. The Election Commissioners had the burden of the proof. The judgment with respect to Cox's residence is affirmed.

*Otto Richter.* Appellant, Mr. Richter, has failed to comply with our rules governing appeals. His appeal, therefore, is dismissed. *Westhues, C.,* concurs; *Barrett, C.,* absent.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.