In the Matter of the Contest by Jerry Kramer of the Election of John Dodson as the Nominee of the Democratic Party for the Office of County Sheriff of Schuyler County, Missouri, in the Primary Election Held on August 3, 1976, in Schuyler County, Missouri.

Jerry KRAMER, Contestant, Appellant,

v.

John DODSON, Contestee, Respondent.

No. KCD 29085.

Missouri Court of Appeals,
Kansas City District.

Oct. 27, 1976.

Motion for Rehearing and/or Transfer Denied Nov. 29, 1976.

L. E. Atherton, Milan, R. M. Gifford, Green City, for appellant.

William Y. Frick, Kirksville, for respondent.

Before SHANGLER, P. J., and SWOFFORD and TURNAGE, JJ.

TURNAGE, Judge.

Jerry Kramer filed an election contest suit following the Democratic primary in August, 1976, in Schuyler County. Kramer and John Dodson were the candidates for the nomination for sheriff. When the votes were certified, Dodson was declared the winner by a tally of 537 to 529.

At the conclusion of Kramer's case as contestant, the court held a prima facie case was not made under § 124.020, RSMo 1975 Supp.

On this appeal Kramer contends the court erred in failing to declare two absentee ballots void because the application for such ballots did not specify the party's ballot the voter desired; in failing to find eighteen absentee ballots void because the voter had failed to properly identify the exact reason he desired to vote absentee; and in failing to declare twelve absentee ballots void because the persons voting the same were no longer living in Schuyler County. Affirmed.

In his first contention, Kramer claims two properly registered voters requested absentee ballots by letter but failed to specify the name of the party in whose primary they desired to vote, or the precinct in which they voted. Section 112.030, RSMo 1969 requires an application for an absentee ballot to be made either on a blank furnished by the election authority or "may be made in writing by first class mail addressed to the election authority signed by the applicant." This Section does not impose any further requirements on the application for an absentee ballot. Kramer does not claim any deficiency in the application other than the failure to specify the party's ballot which the voter was requesting and their precinct. Absent a requirement in the statute that an applicant specify the name of the party in whose primary he wishes to participate, or his precinct, there is no requirement that such be stated. In that instance, the court did not err in refusing to hold the two ballots in that category were void.

Kramer next argues eighteen absentee ballots should have been found insufficient because the affidavit required by § 112.040, RSMo 1975 Supp., was not properly completed because a specific statutory reason the voter was not going to be able to go to the polls was not stated. The statute specifies the reasons which will prevent a person from going to the polls, and permit absentee balloting, as: absence from the county, illness, religious beliefs, or physical disability. The affidavits challenged by Kramer on this basis were on a form furnished by the county clerk, which was the same as the form contained in Section 112.-040 prior to its amendment in 1973. In that form the affidavit stated "that on account of" and following these words was a blank line. Under that blank line, in parenthesis, was stated "absence from the county of my residence, illness or physical disability." In the affidavits challenged by Kramer, the blank line was left vacant but one of the

grounds printed under the line was underlined. Kramer further alleges the underlining was in many instances in a different color or type of marking than the balance of the affidavit. However, there is no effort made to show any fraud or wrongdoing in connection with the completion of any of the affidavits.

In 1973, § 112.040 was amended. At this time the blank line was omitted from the affidavit and the affidavit in the statute now reads in part, "that on account of the absence from the county of my residence, illness, religious beliefs or physical disability, I expect to be prevented from going to the polls to vote on such election day." There is no requirement in this Section, or in any other Section, which requires the voter to designate which of the permissible grounds applies in his individual case. The affidavit simply contains all of the permissible grounds without requiring the voter to elect or specify a particular ground. In that circumstance, there was no requirement for the persons desiring to vote by absentee ballot to specify the precise ground which would prevent them from going to the polls on election day. The grounds were contained in the affidavit and even though the eighteen in question did indicate a specific ground by underlining, such underlining was not required and may, therefore, be regarded as surplusage. The challenge as to these eighteen ballots was properly rejected.

Kramer next challenges twelve absentee ballots because he alleges those twelve persons no longer lived in Schuyler County. Kramer introduced evidence to indicate each of the twelve persons no longer lived in Schuyler County, but, in fact, lived elsewhere. His evidence further indicated all twelve were, in fact, registered to vote as required. Kramer's proof was designed to show these twelve voters had, in fact, removed from the county since their registration to vote and had become disqualified to cast their ballots in Schuyler County.

Section 114.076, RSMo 1975 Supp., requires the county clerk of Schuyler County to conduct a canvass every four years to verify the eligibility of every person whose name appears on the county registration records. This canvass is conducted through the post office, but this Section further provides the clerk may apply to the county court for the appointment of canvassers to make further check of the registration list. The clerk is then required to publish in a newspaper the names of all persons found to be ineligible to remain on the registration rolls by either the post office canvass or by the canvassers. Those who are listed in the newspaper have fifteen days to prove their eligibility as registered voters. The clerk is required to strike the names from the registration records of all those found to be ineligible.

Section 114.081, RSMo 1975 Supp., requires the clerk to cancel the registration after it is learned a registered voter is dead, disenfranchised or removed from the county. Under that Section, the clerk is required to send a notice to the last known address of the voter, and the clerk is authorized to reinstate any person when it is found he has been improperly removed.

Section 114.091, RSMo 1975 Supp., provides no person shall be allowed to vote, except for presidential and vice-presidential electors, unless his name appears on the registration rolls.

Section 114.111, ¶ 3, RSMo 1975 Supp., gives the right to any registered voter to challenge the qualifications of any other registered voter. The judges of election are required to try, in a summary manner before the polls close, the qualifications of any voter brought into question. No person's vote may be rejected except upon the testimony of two credible witnesses and until the challenging person swears before the judges of election, at the time of challenging, that to the best of his knowledge and belief the person challenged is not a qualified voter and the reasons that disqualify him. Upon the judges of election being satisfied that the person challenged is disqualified, they may reject his vote and state his disqualification and the names of the witnesses upon whose testimony his vote was rejected on the registration record.

Section 112.080, RSMo 1975 Supp., provides the vote of an absentee voter may be challenged for good cause and the persons appointed to count the absentee ballots are given the same authority as set out above for election judges to determine the legality of such ballot.

The foregoing will demonstrate the fact the legislature has provided a very exact method by which the registration rolls may be purged prior to an election, and the method by which the qualifications of a voter may be challenged at the time he either votes in person or by absentee ballot. This method also demonstrates the protection which has been given to voters against having their names arbitrarily or mistakenly removed from the rolls. It further gives the voter the protection of requiring the testimony of at least two credible witnesses in order to allow the election judges to find a voter is disqualified.

■ The attempt by Kramer in this election contest to challenge the qualifications of twelve voters on the basis of their residence does not follow any of the steps outlined above by which the qualifications of voters may be challenged. In fact, Kramer does not point to any statutory basis for challenging the qualifications of a voter in an election contest. At most, Kramer is mounting a collateral attack upon the qualification of these voters whose names appeared on the registration rolls at the time of the primary election. It is stated in 25 Am.Jur.2d Elections, ¶ 110, p. 796: "It seems, however, that names of voters entered upon a registration book cannot be stricken therefrom in a collateral proceeding."

The right of a court to find a voter disqualified when he was properly registered at the time of the election in a suit to contest the result of the election was considered in *Perez v. Cognevich*, 156 La. 331, 100 So. 444 (1924). There the court stated at 100 So. 447:

"If these persons had no right to vote because they were not entitled to a place upon the registration rolls, or because they were not entitled to registration as voters in the precinct in which they registered as such, or because their registration did not comply with the law in other respects, the proper proceeding should have been taken to purge their names from the rolls. Both the Constitution and the enactments of the Legislature contemplate direct proceedings against a voter to strike his name from the rolls, except, of course, when it appears that the voter has died, or it appears that since his registration he has been convicted of a felony, or has been declared insane. (citations omitted).

"Were we to give our sanction to the attack here made, we could do so only by ignoring the methods provided by law for purging the rolls, and by permitting what is equivalent to a collateral attack upon the registration of the voters in question, which, of course, we cannot do."

This view by the Louisiana court has been adopted in *State v. Board of Elections of Summit County*, 157 Ohio St. 345, 105 N.E.2d 414 (1952). There the court stated at 105 N.E.2d 417[3]: "However, decisions of other courts of last resort almost without exception deny the right to collaterally attack the validity of a vote cast by one who at the time of voting was regularly registered as a qualified voter according to the laws of the state of registration."

Other cases of like import are *Board of Registration Com'rs v. Campbell*, 251 Ky. 597, 65 S.W.2d 713 (1933); *Moore v. Bay*, 149 Md. 286, 131 A. 459 (1925).

The precise question presented has not been decided in this state. However, the qualification of a voter properly registered at the time of election does not appear as a ground upon which an election contest may be filed under § 124.010, RSMo 1975 Supp. Further the Sections discussed above which require the election authority to purge the registration rolls and which give the right to challenge voters provide a complete scheme for removing from the rolls those who are not qualified to vote and preventing any from actually voting who have lost their qualifications. Absent any attack upon the qualifications of these twelve vot-

ers in the prescribed method, an attack upon their qualification in this election contest suit constitutes a collateral attack upon their qualification as voters. Because the law does not allow such collateral attack, the court did not err in failing to find the ballots of these twelve absentee voters to be subject to challenge.

The judgment is affirmed.

All concur.