Larry WHITENER,
Contestant-Respondent,

and

Cherilyn Stephens,
Contestant-Respondent,

v.

Natholene TURNBEAU, County Clerk of Madison County, Missouri, Contestee,

and

Dewey Barks, Intervenor-Appellant.

No. 41070.

Missouri Court of Appeals,
Eastern District,
Division One.

July 22, 1980.

---

Stephen N. Limbaugh, Jr., Limbaugh, Limbaugh & Russell, Cape Girardeau, for intervenor-appellant.

Lenzie L. Leftridge, Jr., McIlrath, Maynard & Leftridge, Robert J. Blackwell, Mayhugh, Harris & Blackwell, Flat River, for contestants-respondents.

John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, for contestee.

SNYDER, Judge.

This is an election contest case. Contestants-respondents challenged the results of a Marquand-Zion R-VI School District election in which a school tax proposition initially lost by one vote, but upon recount, passed by one vote. After the recount resulted in passage of the tax, intervenor-appellant filed an answer in which he challenged the qualifications of four persons who voted absentee in the election. Respondents' petition contesting the election was filed before the recount was taken. Respondents supported passage of the tax. After the result of the recount was an-

nounced, they filed a motion to dismiss for failure to state a claim upon which relief may be granted, directed both to their own petition and the allegations of the intervenor's answer. The motion was granted by the trial court on the ground that voters' qualifications may not be collaterally attacked in an election contest as the intervenor attempted to do in his answer. The intervenor appealed.

Appellant charges the trial court erred in: (1) granting respondents' motion to dismiss; (2) failing to find that the absentee vote of Larry Masters was invalid because he was not properly registered; (3) refusing to compel Larry Masters to disclose how he voted in the election, as he was an illegal voter; and (4) ordering all costs to be taxed against appellant, when a substantial portion of the costs were attributable to a recount of the ballots before his intervention.

The determinative issue is whether under Missouri law voters' qualifications may be challenged judicially in an election contest. This is a case of first impression under the Comprehensive Election Act of 1977. This court finds voters' qualifications may not be so challenged and affirms the trial court's judgment dismissing the petition and intervenor-appellant's answer. The cause is remanded, however, with instructions to the trial court to assess the costs which accrued prior to appellant's intervention against respondents, and the costs which accrued after intervention against appellant.

The election was held on August 8, 1978. The original count taken in the election was 397 "yes" and 199 "no" votes, which failed to meet the two-thirds requirement for passage of the levy. Contestants Larry Whitener and Cherilyn Stephens filed a petition to contest the election on September 8, 1978. A recount of the votes was taken on October 19, 1978 and an additional "yes" vote found, thus providing the necessary majority for passage of the tax. The recount was requested on behalf of the Marquand-Zion R-VI School District in a letter

received by the clerk of the Circuit Court of Madison County from Robert J. Blackwell. The request was expressly made pursuant to § 115.601, RSMo 1978[1] which grants a right to a vote recount when an election margin is less than one percent.

Respondents filed an amended petition on October 25, 1978 contesting the election, and at the same time filed a motion to dismiss their own petition because the recount resulted in passage of the tax, the result which they supported. Appellant Dewey Barks intervened by leave of court and, also on October 25, 1978, filed an answer in which he alleged that four absentee voters were not qualified to vote. Two days later the respondents filed a separate motion to dismiss for failure to state a claim upon which relief may be granted directed to their own petition and appellant's answer. This appeal involves only one absentee voter, Larry Masters, who, according to appellant, was not properly registered at the time of the election.

■ The trial court granted respondents' motion to dismiss after hearing the evidence from respondents in support of their motion and from appellant in support of his offer of proof of irregularities other than the qualifications of voters. The decision of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Appellant's first point on appeal is that the court erred in dismissing the cause of action on the ground that an action to declare Larry Masters' vote invalid constituted a collateral attack on Masters' qualifications to vote. He claims he is given the right to contest the election under § 115.-553.2, which states, "The result of any election on any question may be contested by one or more registered voters from the area in which the election was held. . . ." He concedes that the Court of Appeals, Western District, ruled this point against his position in *Kramer v. Dodson*, 543

S.W.2d 792 (Mo.App.1976). In *Kramer* the court held that the election statutes then in effect provided a comprehensive system for removing from the rolls those not qualified to vote. The court also noted the general rule that " 'names of voters entered upon a registration book cannot be stricken therefrom in a collateral proceeding.' [Citing 25 Am.Jur.2d Elections, § 110, p. 796]." *Kramer, supra*, 795. Finally, the *Kramer* court held that the statute then in effect, § 124.010, RSMo Supp. 1975, did not specify the qualifications of a voter properly registered at the time of the election as a ground for an election contest.

Appellant contends this court should not follow the rule laid down in *Kramer v. Dodson, supra*, because: (1) it is unfair to require a citizen to rely on canvassing by election judges and not to allow him to challenge a vote judicially; (2) the case was decided prior to the Comprehensive Election Act of 1977 and thus according to statutes which have been repealed; (3) the 1977 laws do not preclude a judicial attack on voter qualifications; and (4) this court has reviewed questions of voter qualifications in *Barks v. Turnbeau*, 573 S.W.2d 677 (Mo. App.1978). He argues that refusing to allow an attack in this case would injure him and the public without due process of law.

Turning to appellant's first argument, it is clear that he is not forced to rely on the election judges to determine the qualifications of absentee voters, but may make his own investigation into compliance with residency requirements. Section 115.289 provides that as applications for an absentee ballots are received, the election authority must post in a conspicuous place, at the entrance to the office of the election authority, a list of the applicants' names, voting addresses, and mailing addresses. Any person is allowed to copy the list. Section 115.303 provides that any absentee vote may be challenged by a registered voter. If appellant had been sufficiently interested in the qualifications of the absentee voters, he

---

1. All statutory references are to RSMo 1978 unless otherwise noted.

could have made his own investigation of the absentee voters' compliance with residency requirements.

Appellant's second argument, that *Kramer v. Dodson, supra,* is distinguishable because it interpreted statutes now repealed, is equally without merit. It is true that the statutes are different. The applicable statute in *Kramer,* § 124.010, RSMo Supp. 1975, applied only to candidates in primary elections, not tax questions, and allowed for allegations that "fraud, misconduct, or irregularity was committed in the election, the balloting, count of the ballots, or the returns thereof." Prior to the Comprehensive Election Act of 1977 there was no provision in Missouri law for contesting an election on a tax question, but § 115.-553.2 of the new law permits one or more registered voters from the area in which the election was held to contest "[t]he result of any election on any question . . . ." The petition is to "set forth the points on which the contestant wishes to contest the election . . . ." § 115.557. There is no recitation of specific grounds for a contest and therefore it falls upon this court to determine whether, in the case under review, the qualifications of registered voters may be challenged in an election contest brought in accordance with the provisions of the Comprehensive Election Act of 1977, particularly §§ 115.553.2 and 115.577.

The difference in statutes does not compel a difference in interpretation. The same principles apply. The court in *Kramer v. Dodson, supra,* held at pages 795–796:

"The precise question presented has not been decided in this state. However, the qualification of a voter properly registered at the time of election does not appear as a ground upon which an election contest may be filed under § 124.010, RSMo 1975 Supp. Further the Sections discussed above which require the election authority to purge the registration rolls and which give the right to challenge voters provide a complete scheme for removing from the rolls those who are not qualified to vote and preventing any from actually voting who have lost their qualifications. Absent any attack upon the qualifications of these twelve voters in the prescribed method, an attack upon their qualification in this election contest suit constitutes a collateral attack upon their qualification as voters. Because the law does not allow such collateral attack, the court did not err in failing to find the ballots of these twelve absentee voters to be subject to challenge."

Each statute in the "complete scheme" mentioned in the quotation has a counterpart in the 1977 act. As with § 114.076, RSMo Supp. 1975, the new § 115.179 requires that a canvass be conducted every four years to verify eligibility to vote in a district. Both § 114.081, RSMo Supp. 1975 and the new § 115.193 require the clerk to cancel the name of a person not qualified to vote. The requirement that a person's name appear on the rolls in order for him to vote in statewide and county-wide elections is found in the 1977 act, § 115.139, as well as the pre-1977 act, § 114.091, RSMo Supp. 1975. The identity and qualifications of any voter may be challenged at the polling place, and he may not vote unless he is the person whose name is registered, § 115.429.-2, just as with the old act, § 114.111.3, RSMo Supp. 1975. Finally, votes by absentee ballot may be challenged as would a vote at the polls under both acts. § 115.303 and § 112.080, RSMo 1969.

Furthermore, the court in *Kramer v. Dodson, supra,* noted that virtually all jurisdictions facing this question have held that an attack on voter qualifications should be made at the polls in accordance with statute, and that judicial attack is impermissible. The court adopted the rationale that the procedure should be to purge the voters' names from the rolls rather than to proceed judicially after the election. It is clear that the changes in the election laws do not preclude the application of *Kramer v. Dodson, supra,* to this case.

■ Appellant's next contention is that the cause should be heard because the statutes do not specifically prohibit judicial attack on voter qualifications in an election contest. There is no common law right to

contest an election. The right to contest must be granted by statute. *State ex rel. Conaway v. Consolidated Sch. Dist. No. 4 of Iron County,* 417 S.W.2d 657 (Mo. banc 1967); *Barks v. Turnbeau, supra.* The Comprehensive Election Act of 1977 grants the right to contest an election on any question, without any mention of attacks on voters' qualifications or any other specific grounds for contest. But as it was held in *Kramer v. Dodson, supra,* collateral attacks on voters' qualifications are impermissible because the law provides other means of challenging them prior to the election and at the time of voting.

Finally, appellant alleges that the trial court's ruling was error because this court permitted a judicial attack on qualifications of absentee voters in *Barks v. Turnbeau, supra.* Appellant is mistaken in his reliance on the *Barks* case. There was no question of the voters' qualifications in *Barks.* Rather, it dealt with failure to follow statutory procedures for absentee voting which are mandatory. Voters' residency qualifications were not at issue. *Barks* is distinguishable; and rejection of appellant's claim here is not inconsistent with the *Barks* opinion.

Two other Missouri cases cited by appellant, *Elliott v. Hogan,* 315 S.W.2d 840 (Mo. App.1958) and *Straughan v. Meyers,* 268 Mo. 580, 187 S.W. 1159 (banc 1916), also lend no support to appellant's contention. These cases, like *Barks,* do not rule on voters' qualifications in an election contest, but on mandatory statutory procedures for absentee ballots.

A Colorado and a Georgia case are cited by appellant. *Russell v. Wheeler,* 165 Colo. 296, 439 P.2d 43 (banc 1968); *Davidson v. Bryan,* 242 Ga. 282, 248 S.E.2d 657 (1978). However, the statutory language in these cases is distinguishable and although they may lend some support to appellant's theory, they are not binding on this court which concludes the better reasoning lies with *Kramer v. Dodson, supra.*

■ Appellant's contention that failure to allow this action amounts to a denial of due process must also be rejected. There is no common law right to contest an election, and if the right is not given by statute, appellant has no legal right of which he has been deprived.

The rule laid down in *Kramer v. Dodson, supra,* is sound and should be followed under present election laws. The 1977 law provides a method for checking and attacking qualifications to vote which is efficient and which guarantees each voter the right to check on the qualifications of voters and to be heard at a meaningful place and time. Therefore, the court was without jurisdiction to determine the validity of Larry Masters' vote.

It is unnecessary to discuss appellant's second and third points relating to the absentee vote of Larry Masters in view of the finding that *Kramer v. Dodson, supra,* must be followed and the trial court's dismissal of the cause of action affirmed.

■ The trial court did err, however, in charging appellant with costs accruing before he intervened, particularly the costs of a ballot recount which was not requested by appellant. An intervenor should not be charged with costs accruing before his intervention. 20 C.J.S. Costs § 118, p. 359; *Dring v. Mainwaring,* 168 Wis. 139, 169 N.W. 301 (1918). If appellant were actually an "intermeddler" rather than an intervenor, he might be liable for all costs. *Ferguson v. Bole,* 168 Pa.Super. 305, 77 A.2d 711 (1951). Here, however, appellant's claim was made in a good faith belief that he had a statutory right to intervene. Therefore, he is not an "intermeddler," and it was error to charge him with the costs which accrued before his intervention.

The cause is remanded with instructions to the trial court to assess the costs which accrued prior to appellant's intervention against the respondents and the costs which accrued after intervention against the appellant. In all other respects, the judgment is affirmed.

STEWART, P. J., and SIMON, J., concur.