HALL v. SCHOENECKE, *Appellant.*

Division One, May 28, 1895.

1. **Residence, Acquisition of, by Student.** A student may gain a residence at the place where he attends school, although he may have gone there only for the purpose of attending school. Whether he has done so or not depends upon the facts and circumstances.

2. ———: INTENTION: EVIDENCE. The question of residence, in such case, is largely one of intention, though, as to this, the evidence of the party himself is not necessarily conclusive. The fact that he is supported and maintained by his parents and spends his vacations with them, away from the school, is a strong, but not necessarily conclusive circumstance to prove that he has not changed his residence.

3. **Residence:** QUESTION FOR COURT. The question of residence is one of fact for the court in cases tried by it, and where no declarations of law are given and there is substantial evidence to support its finding, it will not be disturbed on appeal.

4. ———: INTENTION: PRESUMPTION. The presumption in favor of one having acquired a residence in this state by coming into it and remaining for two years may be rebutted by evidence that it was not his intention to acquire residence here. Whether a change of residence was effected in any case depends upon the intention with which the removal from the former residence was made.

5. ———: REMOVAL FOR PURPOSES OF EDUCATION: INTENTION OF RETURNING TO FORMER RESIDENCE: RIGHT TO VOTE AT TEMPORARY ABODE. A temporary removal by a person for the sole purpose of educating his children without any intention of abandoning his usual residence and with the intention of returning thereto when his purpose had been accomplished, will not constitute such a change of residence as would, under the law, entitle him to vote at his temporary abode.

Hall v. Schoenecke.

6. ——: ——: ——: ——: FINDING OF TRIAL COURT: PRESUMP-
TION. Where there was evidence that a person moved to a place for
the purpose of educating his children and no evidence that such
intention was afterward changed, the finding of the court that he
acquired no residence there will be presumed to be correct, where it
does not appear upon what theory of law the court decided the ques-
tions of fact.

7. Elections: AUSTRALIAN BALLOT: SECRECY: MANDATORY REQUIRE-
MENTS. The controlling object of the Australian ballot law is to
secure an absolutely secret ballot. Every positive requirement
which, if disobeyed, would necessarily defeat this object should be
held mandatory. But such as do not have that effect should be
treated as directory and a failure of the elector to comply strictly
therewith should not be held to invalidate his vote, if the spirit of the
law in the particular case is not violated.

8. ——: ——: ——: ——: STATUTE. Section 4781, Revised
Statutes, 1889, amended (Laws, 1893, p. 156), requiring a voter to
retire to a booth or compartment to prepare his ballot, is mandatory,
in the sense that it should be observed. Under its provisions, the
judges of election should refuse to receive a ballot which they know
has been prepared in a place other than the one provided. The will-
ful disregard of this requirement of this section on the part of the
voter should defeat his vote.

9. ——: ——: ——: ——: ——. The failure of the voter to
retire to the booth or compartment to prepare his ballot should not
result in the rejection of his vote, where it does not appear that such
failure was willful and the evidence is not conclusive that the ballot
was not secretly prepared, there being no mandatory provision of the
statute requiring its rejection for such failure.

10. ——: ELECTION DISTRICTS IN CITY: QUALIFICATION OF VOTER. A
citizen of a town is only qualified as a voter and entitled to vote in
the election district of such town in which he resides. R. S. 1889,
section 4670.

*Appeal from Atchison Circuit Court.*—HON. C. A.
ANTHONY, Judge.

AFFIRMED.

*C. W. Bigger* for appellant.

(1) The court below erred in finding for the con-
testant, for the reason that W. L. Torrence, A. M.

Stephenson and J. P. Stephenson were legal voters at said election, notwithstanding the fact of their being students at the college located in said city, at the time of said election. Constitution of the state of Missouri, art. 8, sec. 7; McCrary on Elections [3 Ed.], secs. 66, 68, pp. 41, 42. (2) The court below erred in finding for the contestant, for the reason that W. C. Graham was a legal voter at said election, as his parents had their domicile in said city for more than one year prior to said election and said Graham being a minor when he arrived in said city, before voting. *Lacy v. Williams*, 27 Mo. 280; *Lewis v. Costello*, 17 Mo. App. 593; *Walker v. Walker*, 1 Mo. App. 404. (3) The lower court erred in finding for contestant, for the reason that C. G. Adair was a legal voter at said election, as one voting for a candidate for mayor in said city, being city officer and elected by the voters at large, is a legal voter for said candidate in a ward other than the ward in which he resides, provided there is no fraud in the election. And for a further reason, one having no family has his place of residence where he generally lodges. *State ex rel. Brown v. Westport*, 116 Mo. 582, and cases cited; R. S. of 1889, sec. 6570, sub sec. 17. (4) The court below erred in finding for contestant for the reason that the ballots cast by J. C. Hawley, M. Dunbar, J. E. Irvin, G. W. Reed, T. F. Willis and J. W. Holliday were illegal, said parties having not prepared their ballots at said election, in the booths made and provided for that purpose. Laws of Missouri, 1893, p. 156, sec. 4741, R. S. 1889, amended; *Blair v. Ridgeley*, 41 Mo. 40; *State ex rel. Breckenridge v. Cook*, 41 Mo. 383.

*Lewis & Ramsay* with *T. F. Willis* for respondent.

(1) The whole case was heard by the court without any instructions or declarations of law and the find-

ing and judgment was a general one for contestant, and the presumption is that the finding of the facts and the application of the law thereto made by the trial court is correct. *Johnson v. Lullman*, 88 Mo. 567; *Gruen v. Bamberger*, 25 Mo. App. 89; *Gumm v. Hubbard*, 97 Mo. 311; *Bray v. Kremp*, 113 Mo. 552; Finkelnburg's Practice in Supreme Court, 103. (2) The partial rulings mentioned on page 48 of appellant's abstract do not pretend to cover all the facts in the case. Only seventeen votes are mentioned as having been ruled upon, when, in fact, three hundred and eighty-five votes were submitted to the court and ruled upon; nor are the facts found upon which these rulings are based. In no sense did the court make a special finding of facts. If all the points urged in appellant's brief were well taken, still it would not show that the judgment is for the wrong party. Finkelnburg's Practice in Supreme Court, 103. (3) The presumption is against the right to vote on the part of college students coming to college from without the city limits of Tarkio. Such is the general law of this state crystallized in the constitution. Art. 8, sec. 7, Constitution of Missouri; 6 Am. and Eng. Encyclopedia, p. 278. How many of the students were excluded or how many were counted does not appear in the record. Only W. L. Torrence, A. M. Stephenson and J. P. Stephenson are referred to in appellant's brief. (4) W. C. Graham had not resided in the state one year and was not entitled to vote. Art. 8, sec. 2, Constitution of Missouri. His Pennsylvania residence could not have been changed without both an intention to remove and an actual removal. *People v. Holden*, 28 Cal. 123; 2 Am. and Eng. Encyclopedia, p. 279; McCrary on Elections [3 Ed.], sec. 53. The guardian and ward authorities cited by appellant are not applicable. (5) The preparation by judges and clerks of election of their ballots without going into the

booth is, at best, but an irregularity which does not interfere with the spirit of the law or purity of the election. No coercion, electioneering or fraud existed. *Bowers v. Smith*, 111 Mo. 45; same case with foot notes in 16 L. Rep. Anno. 754; *Council v. Bush*, 10 L. Rep. Anno. 171. The object of the law is a "fair election and an honest return," or, as sometimes tersely stated, "a free ballot and a fair count." The statute does not say: Such ballots shall be void or that they shall not be counted, and the irregularity being harmless they are not void. Revised Statutes, 1889, secs. 4779, 4785; *Gumm v. Hubbard*, 97 Mo. 319; *Ledbetter v. Hall*, 62 Mo. 422; *West v. Ross*, 53 Mo. 350; McCrary on Elections [3 Ed.], secs. 190, 194; see, also, *Bowers v. Smith*, and *Council v. Bush*, above cited. The only ballots that the Australian ballot law says shall not be counted, are those not containing the initials of the judges (sec. 4785), and those not prepared by the clerk (sec. 4772).

MACFARLANE, J.—At an election held in the city of Tarkio, on April 3, 1894, for the office of mayor, appellant received 185, and respondent 184 of the votes counted by the election officers. Respondent contested the election.

By order of court the ballot boxes were opened, the ballots examined, and the vote recounted by the county clerk, who reported the result thereof to the court. Upon a trial the court found that contestant was elected and judgment was rendered accordingly. Contestee appealed.

I. The votes of three students who voted for contestee, and whose votes were counted by the election officers, were rejected by the court. This ruling of the court is assigned as error.

The evidence discloses the facts that two of the young men whose votes were rejected had formerly lived in the state of Kansas and came to Tarkio for the purpose of attending college. They were still students in college at the date of the election. Their parents, by whom they were supported and their tuition was paid, continued to reside in Kansas. One of them testified that he regarded Tarkio as his home, and expected to reside there after his education was finished. The facts in the case of the other voter were substantially the same, except that his parents resided in Missouri, though not in the city of Tarkio.

The constitution of the state provides that "no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence * * * while a student in any institution of learning." This provision is but a declaration of the law as generally recognized. McCrary on Elections [3 Ed.], secs. 66–68; 6 Am. & Eng. Ency. of Law, 278.

Each case must, then, depend upon the facts. There is no doubt that a student may become a resident of the place where the college is located, though he only went there for the purpose of attending school. Whether he has done so or not, depends upon all the facts and circumstances. The fact that he is supported and maintained by his parents, and spends his vacation with them, are strong, but not necessarily conclusive, circumstances to prove that he has not changed his residence. See cases cited in note 6 Am. & Eng. Encyclopedia of Law, p. 278. The question is, as in other cases, largely one of intention, though as to this, the evidence of the party himself is not necessarily conclusive.

The question in this case was one of fact for the court. There were no declarations of law asked or given, and we can not review the finding of the court,

in law cases, upon questions of fact, when there is substantial evidence to support such finding.

II. W. C. Graham voted for contestee and his vote was counted by the election officers. The vote was rejected by the court.

The evidence shows that the mother of Graham, who was the head of the family, moved from Pennsylvania to Missouri, when he was about eighteen years of age. He remained in the state of Pennsylvania for about two years after his mother removed to this state. He arrived in this state while still a minor, and after that lived in the family of his mother. He had not lived in this state for one year before he voted. The evidence does not show that the mother removed to this state for the purpose of making it her permanent residence. The presumption that would arise from the mere facts that she removed to this state and remained therein two years might be rebutted by evidence that such was not her intention.

A temporary absence of a person from his usual residence, through a series of years, does not necessarily cause a loss of such residence. Whether a change was effected in any case depends upon the intention with which the removal from the former residence was made. McCrary on Elections [3 Ed.], sec. 62.

A temporary removal by a person, for the sole purpose of educating his children, without an intention of abandoning his usual residence, and with the intention of returning thereto when his purpose has been accomplished, will not constitute such a change of residence as would, under the law, entitle him to vote at his temporary abode.

The challenged voter himself testified: "My mother came to Tarkio for the purpose of schooling." That was all the evidence given of her intent in leaving her usual residence. There is no evidence that her

intention was afterward changed. This evidence tended to rebut the presumption that arose from the fact of removal to this state. The court may have thought it sufficient. It does not appear upon what theory of law the court decided the question of fact submitted to it. The presumption is that it decided correctly.

We do not deem it necessary to decide whether a change of residence by the mother accomplished a change of residence by the son in the circumstances in this case.

III. Six voters, five of whom were judges or clerks of election, prepared their ballots without going into the booths provided for that purpose. These all voted for contestant, and contestee insists that the votes were illegal and should not be counted at all.

Section 4781, as amended by act approved April 18, 1893 (Laws, 1893, p. 156), provides: "On receipt of his ballot the elector shall forthwith, and without leaving the polling place, retire alone to one of the places, booths or compartments provided, to prepare his ballot." The section then directs how the ballot shall be prepared. Is this provision of the statute so mandatory in its character and intent, as to invalidate a vote evidenced by a ballot not prepared in the place required?

It will be observed that the legislature does not declare that a ballot prepared elsewhere shall be invalid, or shall not be counted. The statute is not by its terms made mandatory, But it is not to be inferred that an enactment is to be considered absolute only when such express words are employed as denote such legislative intent. But "where the aim and purpose of the lawmaking power would pe plainly defeated if the command to do the thing in a particular manner did not imply an inhibition to do it in any other, no doubt

Hall v. Schoenecke.

can be entertained as to the mandatory character of the statute." 23 Am. & Eng. Ency. of Law, 453, 454.

Does nonconformity with this statute defeat its clearly ascertained purpose? That the controlling object of the Australian ballot law is to secure an absolutely secret ballot, to the end that each elector may fully express his choice of the candidates to be voted for, uninfluenced by threats or intimidation, and that corruption of his vote may be prevented, can not be doubted. Every positive requirement, therefore, which, if disobeyed, would necessarily defeat this object should be held mandatory. But such as do not have that effect should be treated as directory, and a failure by the elector to comply strictly therewith should not be held to invalidate the vote, if the spirit of the law, in the particular case is not violated.

The section in question was only intended to give directions for the guidance of the voters in voting. The spirit of the law and its purpose require that the ballot shall be secret. That it may be made so, booths are to be provided in which the ballot shall be prepared for voting. If the spirit of the law is pursued, that is, if the ballot is in fact a secret one, the will of the elector should not be defeated, unless expressly done by the statute, for a failure to comply strictly with the directions. *Woodward v. Sarsons*, L. R. 10 C. P. 733.

Every section of the statute is mandatory in the sense that it should be observed. Under the law it is certainly the duty of the judges of the election to refuse to receive a ballot which they know has been prepared in a place other than the one provided. The law was made to be observed and not to be disobeyed. A willful disregard of the requirement of this section, on the part of the voter, should undoubtedly defeat his vote. But there is no evidence of such willfulness in this case,

nor was there conclusive evidence that the challenged ballots were not secretly prepared.

Under the evidence the court found that these ballots were properly counted for contestant. This finding necessarily involved the further finding that there was no willful violation of the spirit of the law. The section being merely directory, and a failure to observe it, in the particulars complained of, not being conclusive of the invalidity of the votes cast, we must approve the finding of the court.

IV. One vote which was counted for contestee was rejected by the court on the ground that the voter did not reside in the election district in which he voted. Contestant insists that an elector, in voting for a general officer of a city or town, as mayor, is entitled to vote in any election district in such town or city. In answer to the contention we need only say that the statute provides otherwise. A citizen of a town is only qualified as a voter, and entitled to vote, in the election district therein in which he resides. Revised Statutes, sec. 4670. These are all the errors assigned. Judgment affirmed. All concur.