Paul S. TURNER, Conservator of Virgie Yancey, Appellant,

v.

Elda TURNER, Pat Turner, and Sac River Valley Bank, Respondents.

No. 11866.

Missouri Court of Appeals, Southern District, Division Two.

July 30, 1982.

Gary W. Lynch, Kerry D. Douglas, Douglas, Douglas & Lynch, P. C., Bolivar, for appellant.

Samuel J. Short, Jr., Stockton, for respondents.

BILLINGS, Judge.

Suit by a Kansas conservator of an incapacitated person [Virgie Yancey], seeking an accounting and recovery of assets of such person located in Cedar County, Missouri, and for damages for alleged breach of trust. Defendants' motions to dismiss the three-count petition challenged the capacity of the foreign conservator to maintain the suit and questioned his appointment as Kansas conservator for a life-long Missouri resident. Following a two-day evidentiary hearing, the trial court dismissed the petition and this appeal followed.[1] We affirm.

The pivotal issue in this appeal is whether or not the trial court was foreclosed from examining the question of Virgie Yancey's residency in this proceeding. For reasons which follow, we conclude the matter of residency was a viable issue for the lower court's determination and, therefore, the courts of this state are not obligated to give full faith and credit to the judgment of the Kansas court appointing plaintiff conservator of Virgie Yancey.

■ We start with the proposition that a foreign guardian[2] has no authority over the property of his ward in another state, except so far as allowed by the comity of that state, as expressed through its legislation or its court. 39 Am.Jur.2d Guardian and Ward, § 219 (1968); Paulsen and Best, Appointment of a Guardian In the Conflict of Laws, 45 Iowa L.Rev. 212 (1960); Annot., 102 A.L.R. 444 (1936). " 'The rights and

1. In its order of dismissal, the court found Virgie Yancey was a necessary and indispensable party to the suit because complete relief could not be granted without her presence and that she claimed an interest in the subject of the action; that her absence from Missouri [in Kansas with plaintiff] and the equitable nature of the suit rendered her incapable of being made a party and in equity the cause should not proceed without her being a party; that plaintiff was not validly appointed conservator under Kansas law because Virgie Yancey was not a resident of Kansas and she was a proposed ward in an action pending in the Probate Court of Cedar County, Missouri.

Kansas law [K.S.A. 59–3002–59–3034] (1976) authorizes appointment of Guardians or Conservators. A "guardian" is defined as a person appointed to exercise control over the person of an incapacitated person or of a minor, and a "conservator" is defined as a person appointed to exercise control over the estate of any person. K.S.A. 59–3002.

K.S.A. 59–3006 authorizes the district court having jurisdiction and venue to appoint a guardian for an incapacitated person who is unable to make or communicate responsible decisions concerning his or her person, or a minor, and a conservator for an adult who has made voluntary application pursuant to K.S.A. 59–3007, or an incapacitated person who is unable to make or communicate responsible decisions concerning such person's estate, or a minor.

K.S.A. 59–3007 provides: "Any adult person who is neither an adjudged incapacitated person nor is a proposed ward or proposed conservatee may file in the district court of his or her residence a verified application for the appointment of a conservator for the applicant."

K.S.A. 59–3028 provides a voluntary conservatorship can be terminated by the conservatee upon filing a verified application requesting such.

2. Plaintiff contends his representative status is the same as a guardian of the estate of a person in Missouri. Defendants take a contrary position. We do not deem it necessary to resolve this controversy but will treat plaintiff as a foreign guardian in this case. "A conservator from a sister state has no right to act in his official capacity within the forum unless local legislation empowers him to do so. This rigid rule has on some occasions been disregarded by the courts .... Denial of local power to foreign conservators is much more common. They generally have no power to convey local land. A Missouri conservator could not gain possession through legal process of money held in Texas. The out-of-stater may be unable to appear in court even to advance some important interest of his ward. A foreign conservator has been held not to be a 'guardian' within the meaning of a local statute giving the 'guardian' a preference for letters of administration. The New York Court has held that a foreigner who entered a suit in New York before his appointment as a local conservator could not be made a party by a nunc pro tunc order. North Carolina has even doubted whether the state had power to send a non-resident ward's property out of the jurisdiction into the hands of a foreign conservator." 45 Iowa L.Rev., infra, at 230–231.

powers of guardians are considered as strictly local; and not as entitling them to exercise any authority over the person or personal property of their wards in other States, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators.' " *Hoyt v. Sprague*, 103 U.S. 613, 26 L.Ed. 585 (1881).

■ The authority for a *foreign* guardian to maintain a suit in Missouri courts is found in § 475.335, RSMo 1978,[3] and this statute requires both the guardian and the ward to be *nonresidents* of this state. Consequently, the residence of Virgie Yancey was an issue for the trial court's determination in the proceeding below.

■ Generally, the statutory terms "residents" and "residence" are interpreted to mean "domicile." *State ex rel. King v. Walsh*, 484 S.W.2d 641 (Mo. banc 1972); Restatement (Second) of Conflict of Laws § 11, Comment k (1971); Goodrich and Scoles, Conflict of Laws, p. 35 (4th ed. 1964); 25 Am.Jur.2d Domicil § 4 (1966); 28 C.J.S. Domicile § 2 (1941). We are of the view that as used in § 475.335, the matter of residency is equivalent to domicile.[4]

"It has been said that residence is largely a matter of intention, to be determined not only from the utterances of the person whose residence is in issue but also from his act and in the light of all the facts and circumstances of the case.

"Residence or domicile has been defined to be ' * * * the place with which a person has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by law, * * * ' and also as ' "[t]hat place where

a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." ' " *State ex rel. King v. Walsh*, supra at 644, quoting *In re Toler's Estate*, 325 S.W.2d 755 (Mo.1959).

■ Implicit in the judgment entered by the trial court is the determination that Virgie Yancey was a domiciliary of Missouri, and, therefore, was not a nonresident of this state within the meaning of § 475.335. The question of domicile is to be determined by the law of the forum and neither the Fourteenth Amendment nor the full faith and credit clause of the Federal Constitution requires uniformity in the decisions of the courts of different states on questions of domicile where the exertion of state power is dependent upon domicile within its boundaries. 25 Am.Jur.2d Domicil § 3 (1966); Restatement (Second) Conflict of Laws § 13 (1971).

■ The status of Virgie Yancey's domicile was the key issue before the trial court in the suit brought by plaintiff in his representative capacity. Without a finding that Virgie Yancey was a nonresident of this state, plaintiff, as a foreign conservator or guardian, could not maintain the suit in the face of defendants' challenges. We do not read the Kansas judgment as undertaking to adjudicate the question of Virgie Yancey's domicile, but even if it had done so, this would not have prevented defendants, who were not parties or privies to the Kansas proceeding, from raising the matter of her domicile in this case. 25 Am.Jur.2d Domicil § 102 (1966); Restatement (Second) Law of Judgments § 31.[5]

---

**3.** Section 475.335. "Recovery and removal of property by nonresident guardian.—In all cases where any guardian and his ward are both nonresidents of this state and the ward is entitled to property of any description in this state, the guardian ... shall be entitled to the property to which his ward is entitled ... and to sue for and recover the same in any court of competent jurisdiction in this state."

**4.** In their briefs the parties have treated the terms as synonymous.

**5.** Kansas follows the view of the Restatement (Second) of Conflict of Laws § 79 that *presence* within the state authorizes subject matter jurisdiction to appoint a guardian for the person of one who was a ward in a Nebraska guardianship. *Matter of Miller*, 228 Kan. 606, 620 P.2d 800 (1980).

Defendant Elda Turner is a nephew of and joint owner with Virgie Yancey of various certificates of deposit and government securities. He was also the sole beneficiary of a *joint* will executed by Virgie and her deceased husband in 1967. Virgie was also the owner of a house,

Virgie Yancey was born in 1903 and married Harrison Yancey in 1928. They lived on their farm in Cedar County until 1954, at which time they moved to Stockton. Harrison Yancey died in 1973 and Virgie continued to live in the family home. In 1976 it became noticeable that she was not keeping herself and her home as clean and neat as she had in the past. Later, she evidenced frequent lapses of memory. By early 1978 she was telling others that she had bought another house in Stockton and wanted to move into it. When she was told she did not have another house she would become irritated and angry. She began imagining seeing strangers in her house and her nephew Elda Turner started spending nights with her. On occasion one of her sisters spent the night with her. The "other home" became an obsession with her and in addition to packing boxes with her belongings to take to the "other home" she began wandering away from her home, in search of the nonexistent dwelling. She suffered from arteriosclerosis and was taking several medicines for her failing physical condition. Her condition was diagnosed by her doctor as arteriosclerosis and hypertension and compatible with senility. As a result of her physical and mental condition the physician recommended she be admitted to a nursing home for constant care and treatment. The doctor was of the opinion that because of her condition she was not able to exercise her own will and discretion in connection with her business and personal affairs.[6]

■ Returning to the matter of domicile, we are of the opinion there was substantial evidence to support the trial court's determination that Virgie Yancey was not a resident of Kansas and, by necessary implication, that she continued to be a domiciliary of this state. As stated in *State ex rel. King v. Walsh*, supra, at 645:

"The court said in *In re Toler's Estate*, supra, 325 S.W.2d at 759, 'that * * * [a] person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead. * * * In order to effectuate a change * * * it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode.' The Supreme Court of Oregon, en banc, said in *Elwert v. Elwert*, 196 Or. 256, 248 P.2d 847, 853[9] that '[t]he original domicil is favored and where the facts are conflicting, the pre-

---

lot, 17 acres and articles of personal property, all located in Stockton, Missouri. The day she was removed from a Stockton nursing home by plaintiff, her brother, she was taken to his attorneys' office where she executed a new will which omitted Elda and named plaintiff and others as beneficiaries. She was then taken to Kansas by plaintiff to reside in his home. The next day Elda initiated incompetency proceedings for Virgie in the Probate Court of Cedar County. Approximately one month after Virgie was removed to Kansas the ex parte and voluntary proceedings were conducted in Johnson County, Kansas, and plaintiff was named conservator after the court found Virgie was a resident, she was physically incapacitated, she owned personal and real property of the approximate total value of $90,000.00, and that she had neither been adjudged an incapacitated person nor is "she a proposed ward or conservatee." Less than one month later (July 13, 1978), plaintiff filed this suit. While this suit was pending plaintiff had a public sale of Virgie's personal property at her home in Stockton.

6. Elda Turner and his wife, both of whom had been looking after and caring for Virgie for a number of years, took her to the nursing home on May 17, 1978. Virgie told the registered nurse on duty that "some man and some woman came by in a car and asked her if she wanted to go for a ride, and so she thought she would. She got in the car and this is where she ended up." She told the nurse she did not know the couple who brought her to the home. The following day she was removed from the home by plaintiff.

Virgie's deposition was taken in Kansas in December, 1978. She though she and her husband had continued to live on the farm and she had only lived in town a month or two. She was unaware she had any certificates of deposit and said she had not made a new will in the last year; that the only will she ever made was the one she and her husband made several years ago. She said she had not made up her mind about staying in Kansas or returning to Stockton. In April, 1979, a Stockton acquaintance saw Virgie and she told this person "I am coming home one of these days before long."

sumption is strongly in favor of an original or former domicil as against an acquired one.' In *Hall v. Schoenecke*, [128 Mo. 661, 31 S.W. 97 (1895)] it was said that: 'A temporary absence of a person from his usual residence through a series of years does not necessarily cause a loss of such residence. Whether a change was effected in one case depends upon the intention with which the removal from the former residence was made.'"

■ Having determined Virgie Yancey was not a nonresident within the meaning of § 475.335, the trial court properly concluded that plaintiff, in his representative capacity, could not maintain this suit.

■ We are not unmindful that the parties have devoted much of their brief to the matter of collaterally attacking the Kansas judgment. We do not believe it necessary to lengthen this opinion by addressing this issue but point out that *foreign* judgments rendered without jurisdiction are not entitled to full faith and credit; that lack of jurisdiction may be shown by evidence dehors the original record and contradict the very jurisdictional recitals of the foreign judgment; and a foreign judgment can be collaterally attached for fraud in the procurement.[7]

The judgment is affirmed.

PREWITT, P. J., and HOGAN and MAUS, JJ., concur.

---

7. See: *Leichty v. Kansas City Bridge Co.*, 354 Mo. 629, 190 S.W.2d 201 (Banc 1945), *cert. den.*, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946); *Stuart v. Dickinson*, 290 Mo. 516, 235 S.W. 446 (Banc 1921); *Nelson v. Browning*, 391 S.W.2d 873 (Mo.1965); *Kilbourn v. Kilbourn*, 354 Mo. 17, 190 S.W.2d 206 (1945). *Citizens* *Bank & Trust Co. v. Moore*, 215 Mo.App. 21, 263 S.W. 530 (1924), relied upon by plaintiff, quoted *Howey v. Howey*, 240 S.W. 450 (Mo. 1922). *Leichty* disavows *Howey* on the point in question. Also see: *Scott v. Scott*, 441 S.W.2d 330 (Mo.1969); *Morrissey v. Rodgers*, 137 Kan. 626, 21 P.2d 359 (1933).