**In the Matter of: Steven PRYE,**

**No. ED 85576, ED 85777.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 2, 2005.

Anthony E. Rothert, Alton, IL, for appellant.

Lee Clayton McMurray, St. Louis, MO, for ad litem.

Andrew G. Toennies, Gerald A. Nester, Office of Public Adm., Jeremiah W. (Jay) Nixon, Attorney General, Woodie J. Curtis, Jr., Assistant Attorney General, St. Louis, MO, for Respondent.

GARY M. GAERTNER, Sr., Presiding Judge.

Appellant, Steven M. Prye ("Prye"), whose interests are represented by the Illinois Office of State Guardian ("IOSG") appeals from the judgment of the Circuit Court of the City of St. Louis ordering IOSG to take custody and control of Prye and to place him in an appropriate treatment setting in Illinois. We reverse in part and dismiss in part.

Prye is approximately fifty-two years old. He was born and raised in Memphis, Tennessee. Prye has degrees from Yale University, Harvard Law School, and New York University School of Law. After law school, Prye worked in New York City law firms for several years. Then he was a law professor in Vermont and at the University of Illinois.

While at the University of Illinois, Prye began to show signs of mental illness, and he eventually lost his job there and returned to Memphis, Tennessee. In Memphis, Prye was hospitalized in January of 2001 and received inpatient treatment at least four more times at the Memphis Mental Health Institute between April 25, 2001 and October 1, 2002.

In October of 2002, Prye went to visit a friend in Champaign, Illinois and upon his arrival, his friend took him to a hospital for treatment. In January of 2003, Prye was committed under Illinois law to McFarland Mental Health Center ("McFarland") in Springfield, Illinois. Prye was transferred in August of 2003 to the Chester Mental Health Center ("Chester") in Chester, Illinois, which was a high security mental health care facility. Prye

was transferred to Chester because of his attempts to elope and an incident with a staff member at McFarland. At Chester, Prye was diagnosed with Pick's syndrome.[1]

While Prye was at Chester, a guardianship proceeding was commenced in Sangamon County, Illinois, and the Sangamon County court issued an order appointing IOSG as "plenary guardian" of Prye.

When Prye was at Chester, he was often placed in physical restraints due to his combative and uncontrolled behavior. Further, he received no medication to treat Pick's disease. IOSG facilitated an evaluation at Washington University in St. Louis, Missouri, which revealed Prye suffered from Schizo affective Disorder, Bipolar type. IOSG transferred Prye out of Chester on March 31, 2004, before his physician there had treated him for the new diagnosis.

IOSG placed Prye in Park Haven Care Center ("Park Haven"), a nursing home in Smithton, Illinois. Shortly thereafter, he was discharged due to an incident at a nearby grade school, and IOSG transferred him to the psychiatric ward at St. Alexius Hospital ("St.Alexius") in the City of St. Louis. On April 15, 2004, Prye was discharged from St. Alexius and transferred back to Park Haven. After repeated instances of inappropriate behavior, IOSG removed Prye from Park Haven on April 20, 2004 and readmitted him to the psychiatric ward at St. Alexius. Numerous types of treatment have been attempted, although none have been successful. Prye has refused any kind of care and has refused to allow physicians to examine him.

On September 20, 2004, St. Alexius filed a petition for appointment of a guardian, seeking that Prye be declared incapacitated and a Missouri guardian appointed for him pursuant to Chapter 475, RSMo (2000).[2] On October 20, 2004, St. Alexius filed an application for detention of Prye, asking that in the alternative to the guardianship petition, Prye be involuntarily committed at the Missouri Psychiatric Center ("MPC") for treatment of his mental illness. St. Alexius alleged that Prye had been diagnosed with Schizoaffective Disorder, Bipolar type, and was a danger to himself and employees of St. Alexius. St. Alexius stated that Prye had already injured several employees and asked that he be detained, evaluated, and treated immediately pursuant to section 632.305. St. Alexius also attached affidavits from ten employees who attested to his violent behavior.

On November 4, 2004, St. Alexius amended its guardianship petition. This petition indicated that Penny Rausch was serving as the Guardian of Prye pursuant to an order issued in Sangamon County, Illinois on or about December 12, 2003. The petition also stated that Prye had resided in Missouri at St. Alexius for the last six months and that the need for a Missouri guardian had become necessary. The petition asserted that Prye needed a guardian to be responsible for healthcare decisions, appropriate residential care, and overseeing and arranging for necessary personal care because Prye was unable to take care of these matters due to his schizophrenia, depression, delusional behavior, take care of these matters due to his schizophrenia, depression, delusional behavior, hallucinations, and poor judgment. St. Alexius's petition sought to have Gerard Nester, the Public Adminis-

---

1. In later evaluations, it was determined that this was an incorrect diagnosis, and Prye did not have Pick's disease, a form of dementia.

2. All further statutory references are to RSMo (2000) unless otherwise indicated.

trator for the City of St. Louis, appointed as Prye's guardian. St. Alexius attached several exhibits to its amended petition. The first exhibit showed that Prye's closest relative was a half-sister in Memphis, Tennessee. Another exhibit detailed Prye's assets. Also attached were a letter of guardianship granting IOSG control and custody over Prye, an order adjudicating the need for and appointment of a guardian, the report of a guardian ad litem recommending a guardianship for Prye, and the underlying petition seeking an adjudication of disability and an appointment of a guardian filed by James E. Myers, Psy.D., in Sangamon County, Illinois.

Several parties were allowed to intervene in the proceedings. Gerard Nester was allowed to intervene as an interested party because no other natural person formally consented to act as a prospective Missouri guardian. The IOSG filed a motion to intervene because it had an interest in that it was already the legally appointed guardian pursuant to the court order in Sangamon County, Illinois. This motion was granted "as a matter of comity." The Missouri Department of Mental Health ("MDMH") also filed a motion to intervene, which was granted.

Prye waived his right to be present at trial and also waived his right to a jury trial. St. Alexius was represented by private counsel at trial. On December 13, 2004, the Circuit Court of the City of St. Louis issued its "Order And Judgment On Petition For Appointment Of Guardian Or In The Alternative Application For Detention (Involuntary Civil Commitment)." The trial court found St. Alexius's application for detention was not filed under oath as required by section 632.305.1. Therefore, it was not properly before the trial

court, and it was denied. Further, the trial court found Prye had not changed his state of domicile or legal residence to Missouri either through his own acts or the acts of his Illinois guardian. However, the trial court found that even though Prye was not a Missouri resident and already had a guardian in Illinois, it still had jurisdiction to appoint a Missouri guardian for Prye pursuant to section 475.035. The trial court also found that the Illinois guardianship had "no extraterritorial legal effect" in Missouri, and further, that the Illinois guardian had no legal authority to admit or keep Prye in a mental health facility in Missouri or Illinois without Prye's actual, willing consent. The trial court denied the motions to dismiss of both IOSG and the Public Administrator. The trial court found Prye met the criteria justifying appointment of a guardian, but elected not to appoint a guardian in this case. According to the trial court, Prye's physical presence in Missouri was "artificially and improperly created" by IOSG, which exceeded its legal authority in moving Prye to Missouri. Finally, the trial court ordered IOSG to take physical custody and control of Prye and to place him in an appropriate treatment setting in Illinois, the only place it had jurisdiction. Further, the trial court issued a writ of habeas corpus and directed St. Alexius to produce the body of Prye for a show cause habeas corpus hearing.[3]

This appeal followed.

On January 14, 2005, we entered an order staying all further proceedings in the trial court pending resolution of this appeal. On March 21, 2005, we clarified that order stating that until the appeal is resolved, the IOSG is the only recognized

3. The trial court recognized that if IOSG complied with the order to take custody and control of Prye and return him to Illinois, the habeas corpus hearing order would become moot.

court-appointed guardian for Prye. On June 17, 2005, we issued an order lifting the stay in part to allow IOSG to take custody of Prye and find an appropriate placement for him other than in Missouri. After the case was argued and submitted, this Court was notified on July 7, 2005, that Prye had been discharged from St. Alexius and moved outside the State of Missouri.

Initially, we must determine whether the controversy in this matter has been rendered moot. An appeal may be rendered moot if an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. *Kinsky v. Steiger,* 109 S.W.3d 194, 195 (Mo.App. E.D.2003), *quoting Local Union 1287 v. Kansas City Area Transp. Auth.,* 848 S.W.2d 462, 463 (Mo. banc 1993).

Missouri courts have only recognized two narrow exceptions to the mootness doctrine. First, if a case becomes moot after argument and submission, dismissal is within our discretion. *Kinsky,* 109 S.W.3d at 196. The second exception applies if a case presents an issue that (1) is of general importance and public interest, (2) will recur, and (3) will elude appellate review in future live controversies. *Id.* If this exception applies, dismissal is also within our discretion. *Id.* The second exception "is very narrow ... and if an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of review, the 'public interest' exception does not apply." *Id., quoting In re Southwestern Bell Tel. Co.'s Pro. Rev.,* 18 S.W.3d 575, 577 (Mo. App. W.D.2000).

In this case, Prye has been moved from the state of Missouri, which renders this case moot. However, before dismissing the case, we must determine if an exception to the mootness doctrine applies. The second exception to the mootness doctrine is inapplicable because there is no reason that this issue would elude appellate review in future live controversies. However, Prye was moved out of the state of Missouri after argument and submission of this appeal. Thus, this situation falls within an exception to the mootness doctrine, and we have discretion to decide whether to dismiss the appeal. We decline to dismiss the appeal in whole, however, and exercise our discretion to address the second point of the IOSG's appeal, due to the significance of the trial court's decision in this regard.

In its second point on appeal, IOSG argues the probate court erred in refusing to recognize and give effect to the Illinois guardianship order under the Full Faith and Credit Clause of the United States Constitution, and in refusing to dismiss the guardianship and detention petitions.

Review of a probate court's rulings in a proceeding to appoint a guardian or conservator is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). *Oliva v. Oliva,* 113 S.W.3d 269, 273 (Mo. App. W.D.2003), *quoting Keyser v. Keyser,* 81 S.W.3d 164, 168 (Mo.App. W.D.2002). As a result, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. In determining the sufficiency of the evidence, we accept as true the evidence and all inferences favorable to the court's decision and disregard all contrary evidence and inferences. *In re Estate of Ferguson,* 130 S.W.3d 656, 660 (Mo. App. E.D.2004).

The probate court's judgment is premised, in large part, on its conclusion that the Illinois guardianship order is not enti-

tled to full faith and credit and; therefore, IOSG is not afforded extraterritorial jurisdiction in Missouri. Because Prye had no Missouri guardian, the trial court recognized that the criteria to justify appointment of a Missouri guardian were present. Instead of appointing a Missouri guardian, however, the trial court fashioned its own remedy and directed IOSG to take custody of Prye and move him to Illinois, the only jurisdiction where it believed IOSG had legal authority to act.

■ Missouri is compelled to give full faith and credit to a judgment of another state unless the judgment of the rendering state is void for lack of jurisdiction over the person or subject matter, or is obtained by fraud. *Phillips v. Fallen,* 6 S.W.3d 862, 864 (Mo.banc 1999). No party to these proceedings offers any argument that the Illinois judgment falls within these exceptions or that the Illinois judgment appointing the guardian is not valid.

The probate court relied upon a case from the Southern District of the Missouri Court of Appeals from 1982 that held the rights and powers of guardians are considered as strictly local and do not entitle them to exercise any authority over the person or personal property of their wards in other States. *Turner v. Turner,* 637 S.W.2d 764, 767 (Mo.App. S.D.1982). This conclusion was premised upon the same general reasoning that has circumscribed the rights and authorities of executors and administrators and relied upon *dicta* in a United States Supreme court case from 1881, *Hoyt v. Sprague,* 103 U.S. 613, 13 Otto 613, 26 L.Ed. 585 (1881). *Turner,* 637 S.W.2d at 767.

However, the issue in the *Turner* appeal concerned the capacity of a foreign conservator to maintain a suit in Missouri on behalf of the alleged incapacitated person. *Id.* at 766. It did not address the issue of whether a foreign judgment appointing a guardian is entitled to full faith and credit. *Id.* In addition, the *Turner* case relied upon an interpretation of section 475.335, which was subsequently rewritten. Indeed, the Missouri guardianship code was revised in 1983 and now recognizes foreign conservators and guardians. Section 475.055 was rewritten in 1983, and the revision included subsection 3, which states:

A person becomes a guardian or conservator of a minor or incapacitated or disabled person upon issuance of letters of guardianship or conservatorship by the court. A person so appointed need not reside within this state in order to accept or serve as guardian or conservator, unless the court finds that such person, taking into consideration his place of residence, is unable to effectively perform the duties of guardian or conservator as provided by this code. The guardianship or conservatorship status continues until terminated, without regard to the location from time to time, whether within or outside of this state, of the guardian and ward or conservator and protectee.

Section 475.055.3. Previously, this section had stated that "no person who is a nonresident of this state shall be appointed guardian of the person or of the estate." Section 475.055.2 RSMo (1982).

In addition, other provisions of Chapter 475 provide:

If no local conservator has been appointed and no petition in a conservatorship proceeding is pending in this state, a domiciliary foreign guardian, curator, committee or conservator may file with a court of a county in this state in which property belonging to the minor or disabled person is located, authenticated copies of his appointment and of any official bond he has given. Thereafter, he may exercise as to assets in this state

all powers of a local conservator and may maintain actions and proceedings in this state subject to any conditions imposed upon nonresident parties generally.

Section 475.336.

A foreign guardian ... submits personally to the jurisdiction of the courts of this state in any proceeding relating to ... doing any act as a guardian or conservator in this state which would have given the state jurisdiction over him as an individual.

Section 475.337. Thus, while there is a paucity of Missouri case law on this issue, these Missouri statutes indicate a willingness to recognize guardianship judgments without regard to the location of the guardian or ward.

In this case, IOSG removed Prye from Illinois where it was appointed as Prye's guardian. IOSG filed a certified copy of its "Letters of Guardianship" in Missouri. Further, IOSG arranged for psychiatric consultations in Missouri and signed Missouri hospital admissions papers on behalf of Prye. Thus, IOSG has submitted itself to the jurisdiction of Missouri courts through these actions. As mentioned above, Missouri law expresses an intent to continue a guardianship without regard to the location from time to time, whether within or outside of this state, of the guardian and ward. Finding that IOSG has no authority to act with regard to its ward, who was located in Missouri, would be contrary to the intent of section 475.055.3, which seeks to give Missouri guardianships such power in other jurisdictions.

Therefore, the Illinois guardianship status of IOSG is entitled to recognition and enforcement by the Missouri courts under the Full Faith and Credit Clause. The probate court's conclusion that the Illinois guardianship had no extraterritorial effect outside of Illinois, and that the Illinois guardian had no legal authority to admit Prye to a Missouri mental health facility erroneously applied the law. The Illinois guardian was entitled to recognition in Missouri. Point granted.

We exercise our discretion to dismiss IOSG's remaining points on appeal as moot.

The judgment of the trial court is reversed. The rest of the appeal is dismissed.

SHERRI B. SULLIVAN, J. and BOOKER T. SHAW, J., concur.