In the Matter of Bryan PULLEY, an Incapacitated Person by David J. Pulley, Next Friend David J. Pulley, Respondent,

v.

Elizabeth SANDGREN, Appellant.

No. WD 64966.

Missouri Court of Appeals, Western District.

May 9, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2006.

Application for Transfer Denied Aug. 22, 2006.

---

Elton W. Fay, Esq., Columbia, MO, for appellant.

Larry E. Tate, Esq., Booneville, MO, for respondent Bryan Pulley.

James M. Conway, Esq., Booneville, MO, for respondent James Pulley.

Before SMITH, C.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Elizabeth Sandgren (Mother) appeals from the judgment removing her as guardian of her disabled son, Bryan Pulley, and appointing David Pulley (Father) as successor guardian. Mother raises two points: (1) the circuit court erred in accepting transfer of the guardianship matter from the State of Michigan; and (2) the evidence was insufficient to support her removal as guardian under Missouri law. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Mother and Father were divorced when their son, Bryan, was eight years old. Mother eventually remarried and moved to Michigan. Bryan had been living with his Father in Boonville (Cooper County, Missouri) for almost two years when, in November 1993, at age seventeen, he was involved in a serious automobile accident and suffered a permanent brain injury.

A few weeks after the accident, Father agreed to allow Mother to take Bryan to Michigan for rehabilitation. In 1994, the Probate Court of Oakland County, Michigan ("Michigan court") appointed Mother as Bryan's guardian following his eighteenth birthday. Mother was active in Bryan's rehabilitation for several years and served as the payee for his social security benefits.

In 1998, Mother's family moved to Virginia where her husband had accepted a new job. Mother was displeased with Bryan's rehabilitative progress in Virginia and, thus, she asked Father to consider taking Bryan to live in Missouri.

Bryan returned to live with his Father in September 2000. He became regularly involved in a work and life-skills program known as Unlimited Opportunities. Although the work opportunities dwindled over the years, Bryan enjoyed the program, liked the routine of his life in Boonville, and considered his Father to be his "Bud."

In September 2003, Father told Mother that he wanted to obtain guardianship of Bryan. Mother said she planned to move Bryan from Boonville to her new home in Las Vegas, Nevada, where she thought there would be greater opportunities to get him involved in work and skill development programs.

In October 2003, Father filed a petition in the Cooper County Circuit Court, Probate Division, to register the foreign (Michigan) guardianship order and to modify the guardianship of Bryan. Mother and the Michigan probate court received notice of Father's request to transfer the guardianship matter to Cooper County. Following a hearing at which Mother was represented by counsel, the Michigan court entered an order transferring the guardianship matter to Judge Robert Koffman of the Cooper County Circuit Court on August 24, 2004.

Judge Koffman subsequently held a two-day hearing on the guardianship petition, at which Mother, Father, and several of Bryan's caseworkers testified. On December 9, 2004, the circuit court entered a judgment removing Mother as Bryan's guardian and appointing Father as his successor guardian. Mother appeals.

### STANDARD OF REVIEW

Our review of the circuit court's judgment in proceedings to appoint a guardian is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In re Prye*, 169 S.W.3d 116, 120 (Mo.App.2005). As a result, we must affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Id.* We must consider the evidence and all reasonable inferences in a light most favorable to the judgment, disregarding any evidence or inferences to the contrary. *Id.* Although we give deference to the circuit court's factual determinations, our review of any error in applying the law is *de novo.* *Langdon v. United Rests., Inc.* 105 S.W.3d 882, 886 (Mo.App.2003).

### PROPRIETY OF TRANSFER

▌ In her first point, Mother contends the circuit court erred as matter of law in accepting transfer of the guardianship matter because the Michigan court had no authority to transfer jurisdiction. Although the Michigan court recited Michigan Court Rule (MCR) 2.227[1] as the basis for its transfer order, Mother argues that the rule only authorized a change of venue within the State of Michigan and did not permit out-of-state transfer. Based on the improper grounds for transfer, Mother asserts the Cooper County Circuit Court did not have "subject matter jurisdiction" to accept the guardianship case and remove her as guardian.

▌ Mother incorrectly frames the issue on appeal as one of subject matter jurisdiction. A court obtains subject matter jurisdiction by operation of law. *Mo. Soybean Assoc. v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 22 (Mo. banc 2003). Subject matter jurisdiction is "the power to hear and determine cases of the general class to which the proceeding in question belong." *Id.* (quoting 21 C.J.S. Courts sec. 18, p. 24 (1990); *Boone v. Lou Budke's Arrow Fin. Co.,* 98 S.W.3d 555 (Mo.App.2002).) Under Missouri law, the probate division of a circuit court has statutory authority over all matters pertaining to the appointment of guardians of incapacitated persons. Section 472.020;[2] *In re D.L.J.,* 916 S.W.2d 437, 437–38 (Mo.App. 1996). Thus, Judge Koffman, as probate judge for the Cooper County Circuit Court, had subject matter jurisdiction to accept transfer of the guardianship matter from Michigan and rule on Father's petition to modify. Similarly, it is clear that venue was proper in Cooper County as the place where Bryan Pulley had lived for at least four years prior to the modification hearing. Section 475.035.2.

▌ Mother also improperly seeks to challenge the correctness of the Michigan transfer order in this Missouri proceeding. She cites no authority for this collateral attack on a foreign order and has made no effort to appeal or challenge the order in the court system where it was rendered.

▌ Missouri courts are obligated to give "full faith and credit" to a foreign state's judicial proceedings unless the order or judgment was obtained by fraud or is void for lack of jurisdiction. *Prye,* 169 S.W.3d at 121; *In re R.C.P.,* 57 S.W.3d 365, 371 (Mo.App.2001). Mother makes no allegation of fraud, nor does she assert that the Michigan court lacked personal or subject matter jurisdiction to rule in the

---

1. In relevant part, the rule states as follows:
 Rule 2.227 Transfer of Actions on Finding of Lack of Jurisdiction
 (A) Transfer to Court Which Has Jurisdiction
 (1) When the court in which a civil action is pending determines that it lacks jurisdiction of the subject matter of the action, but that some other Michigan court would have jurisdiction of the action, the court may order the action transferred to the other court in a place where venue would be proper. If the question of jurisdiction is raised by the court on its own initiative, the action may not be transferred until the parties are given notice and an opportunity to be heard on the jurisdictional issue.

2. All statutory citations are to the Missouri Revised Statutes 2000, unless otherwise noted.

guardianship case. She contends only that the Michigan court erred in applying MCR 2.227 as the legal grounds for transferring the case to Missouri.

 With respect to a foreign order or judgment, we must presume the state court had jurisdiction and that it rendered a valid judgment in accordance with its laws and the issues in the case. *L & L Wholesale, Inc. v. Gibbens*, 108 S.W.3d 74, 79 (Mo.App.2003). The concept of giving "full faith and credit" to a foreign judgment generally precludes any inquiry into the merits of the underlying cause of action, and precludes questioning the logic or consistency of the decision, or the validity of the legal principles upon which it is based. *In re Estate of Fields*, 588 S.W.2d 50, 52 (Mo.App.1979).

The proper place for Mother to have challenged the decision of the Michigan court was on appeal in Michigan, not in Missouri. *Williams v. Williams*, 997 S.W.2d 80, 83 (Mo.App.1999); *L & L*, 108 S.W.3d at 80, 82. Given the presumptive validity of the transfer order and Mother's failure to prove otherwise, the Cooper County Circuit Court did not err in proceeding with the guardianship modification. Point I is denied.

### SUFFICIENCY OF THE EVIDENCE

 In Point II, Mother contends there is no substantial evidence to support the trial court's decision to remove her as Bryan's guardian. She argues that a party seeking to remove a guardian bears the burden of proving at least one ground for removal. *In the Estate of Kelton*, 141 S.W.3d 395, 400 (Mo.App.2004). A guardian can be removed for the same reasons as a personal representative. Section 475.110. The statutory grounds for removal include mental incapacity, felony or other infamous crime or conviction, habitual drunkenness, incapacity or unsuitability to execute the trust reposed, failure to discharge duties, waste or mismanagement, endangerment of co-representative, or failure to answer any citation or attachment to make settlement. Section 473.140. Mother contends the circuit court failed to find evidence in support of any of these grounds.

Citing *Reece v. Reece*, 890 S.W.2d 706 (Mo.App.1995), the trial court found Mother abdicated her guardianship duties by leaving Bryan with Father for four years, by moving to other locales, by terminating Bryan's social security benefits, by using his benefits for her personal use, and by failing to participate in his annual planning sessions for at least three years.

Mother asserts *Reece* is factually inapplicable, as it determined that the parent of a *minor* child could not fulfill his natural guardian obligations by simply placing the child with another caretaker. In contrast, Bryan is an adult and Mother was appointed as his *statutory* guardian after he reached the age of eighteen. Mother contends she fulfilled her statutory duties by making sure Bryan resided in an appropriate setting, Section 475.120.3(1); by assuring that he received medical care and other services, Section 475.120.3(2); by promoting and protecting Bryan's care, comfort, safety, health and welfare, Section 475.120.3(3); and by providing written consent in Bryan's behalf for appropriate services, Section 475.120.3(4).

We agree with Mother that the *Reece* decision is not instructive because it distinguishes between the "greater" responsibilities of a natural parent and the more limited statutory duties of a guardian. *Reece*, 890 S.W.2d at 710. In *Reece*, the court even implied that a guardian could fulfill his or her statutory obligations by placing the ward with another caretaker. *Id.* However, in this case, there are additional factors that support the circuit court's finding that Mother should be removed as Bryan's guardian despite her

claims of temporarily transferring caretaker responsibility to Father.

First, as a result of the Court Reform and Revision Act of 1979, probate courts became a division of the circuit court. *In re Estate of Pittman*, 16 S.W.3d 639, 642 (Mo.App.2000). As such, they were vested with general equity jurisdiction and were no longer bound to remove a guardian solely on statutory grounds. *Id.* (citing 5B JOHN A. BORRON, JR. MISSOURI PRACTICE: PROBATE LAW AND PRACTICE SECTION 1982 (2d. ed.1992).)

Second, this court has previously held that infrequent visits to a ward by the guardian, combined with failure to provide annual settlement reports were sufficient factors to find the guardian was no longer operating in the best interests of the ward. *Id.* A statutory guardian such as Mother is required to act in the best interests of her ward, Section 475.120.2, and her failure to do so may support termination of her guardianship. *Id.*

The record demonstrates there are two parents here who honestly care about Bryan. By mutual agreement, each has had a hand in caring for Bryan during various stages of his life. The record clearly reflects evidence to support a finding in favor of either parent as a guardian who will act in Bryan's best interest. However, our standard of review requires consideration of the evidence in a light most favorable to the circuit court's judgment, disregarding all contrary evidence and inferences.

For the last four years, Bryan has lived with his Father. He is now 28 years old and has established a daily routine and work-related activities with which he is comfortable. All of Bryan's caseworkers and care providers testified that he is a loving, socially interactive young man who has definite opinions about his likes and dislikes. Bryan has expressed on several occasions that he enjoys visiting his Mother, but he wants to continue living with his Father in the familiar surroundings of Boonville.

Mother left Bryan with Father four years ago. While Bryan made trips to Mother's home for Christmas for three years and sometimes during the summer, there is no evidence that Mother made any regular visits to Missouri. She made no financial contribution to Bryan's care during the time he lived with Father, despite the fact that she continued to collect his Social Security benefits until April 2003, when she cancelled them. She did not participate in any case plan or annual review until 2004, after Father filed his petition to modify the guardianship.

There is substantial evidence in the record to support the circuit court's decision to remove Mother as Bryan's guardian based on her failure to remain routinely involved in managing his personal affairs and her abdication of all responsibilities to Father. "Unlike most litigation in which the judge is a neutral arbiter, the court is charged [here] with an affirmative duty to determine what is in the best interests of the ward. Thus, a greater burden is placed on the court than simply according the parties a fair trial." 4B JOHN A. BORRON, JR., MISSOURI PRACTICE: PROBATE AND SURROGATE LAWS MANUAL SECTION 475.120 at 145–46 (2d ed.2001). We find no error in the circuit court's determination that it was in Bryan's best interests to remain with his Father and to transfer guardianship to the person responsible for his daily care. Point II is denied.

The circuit court's judgment is affirmed.

All concur.